WILLIAM W. LEE, RECEIVER, v. JOHN W. CUTRER.

[51 South. 808.]

1. CORPORATIONS. *Stock subscriptions. Payment.*

In the absence of a charter or statutory provision negativing the right, corporate stock may in good faith be paid for in property or services at a fair valuation.

2. SAME. *Same. "Cash." Meaning of.*

The provision in the charter of a corporation that corporate stock may be paid for "in cash or in monthly installments" does not preclude payment therefor in property or by the performance of services for the corporation, since the word "cash" is used to prevent sales upon credit and not to designate the medium of payment

FROM the circuit court of, second district, Coahoma county. HON. SAMUEL C. COOK, Judge.

W. M. Lee, receiver of the Jonestown bank, a corporation, appellant, was plaintiff in the court below; Cutrer, appellee, was defendant there. From a judgment in favor of the defendant the plaintiff appealed to the supreme court. The opinion of the court states the facts.

*Frank Johnston,* for appellant.

Can subscriptions to the capital stock of a bank organized under the laws of our state, be paid in anything other than money, where the charter requires that such payments shall be made in money, specie, or cash, or equivalent terms? Under charters containing no express requirements on this subject the decisions are generally agreed that the payment may be made in any *bona fide* transactions between the banking corporation and the stockholder, in money or its equivalent. 26 Am. & Eng. Ency. of Law (2d ed.) 839. But such is not the question in this case, which arises under, and is governed

by a bank charter that expressly and explicitly requires that all subscriptions for stock be paid in money. 26 Am. & Eng. Ency. of Law (2d ed.), 839, note 10.

This latter doctrine has been settled in this state for more than sixty years by the decision of this court in *King v. Elliott,* 5 Smed. & M. 428, in which the whole question was clearly presented, and wherein it was held that the capital stock of a bank constituted a trust fund for the creditors of the bank; and that under a charter provision requiring the stock subscriptions to be paid in cash, only cash could be received in payment of such subscription. In the case cited, the charter provided that twenty per cent of the first installment of the stock should be paid in specie, or in the notes of specie paying banks. Chief Justice SHARKEY, in delivering the opinion of the court, said on this point: "By requiring that the first installment should be paid in specie, it necessarily followed that all other installments should be paid in the same way; in the absence of a special provision directing otherwise. Indeed, the payment, of the capital stock in money, is essential to the existence of a bank." In the case of *King v. Elliott, supra,* the charter was silent as to how the residue should be paid, but on construction of the charter, the court held that this residue should also be paid in specie. *In re Metropolitan Carriage Co.,* Law Rep. 14 Eq. 37, the stockholder paid for his stock with a claim that he held against the corporation; and the certificates of stock were then issued to him as fully paid up stock. The statute governing the case required that the shares of stock should be paid for in cash, and the court, therefore, very properly held that such should be the manner of payment.

In *Crocker v. Crane,* 21 Wend. (N. Y.) 211, the statute required the stock to be paid for in cash. The stockholder had given his check for the stock, and this, the court held, was not a compliance with the statute.

The case of *Haviland v. Chance,* 39 Barb. (N. Y.) 283, was one of a special or limited partnership under a statute requiring a special or limited partner to pay his contribution towards the capital in cash. He attempted to pay this contribution in goods, whereupon, the court, in delivering the opinion, held that this was not a compliance with the statute, and accordingly he did not become a limited or special partner, but became a general partner, and as such was liable for all the debts of the partnership.

The statute makes the law of the case, and it must be strictly followed and complied with. In the Ohio case of *Henry v. R. R. Co.,* 17 Ohio, 187, the Ohio statute required the subscriptions to the capital stock to be paid in cash. Some of the stockholders paid for their stock in goods; and upon this question, the court said: "Stockholders who have attempted to secure by agreement a privilege of paying up their stock subscriptions in goods, or otherwise, except in money, as contemplated by the charter, will not be allowed the benefit of such subscriptions. Such an agreement will be considered as a fraud upon the other stockholders. And the amount due must be collected in money." See also *Noble, Admr., v. Callender,* 20 Ohio St. Rep. 199; *V. & A. R. R. Co. v. Henry,* 17 Ohio, 187; *Tasker v. Wallace,* 6 Daly (N. Y.), 464.

That the capital stock of a bank is a trust fund for its creditors is a doctrine of the common law of universal acceptance. Judge Story announced this doctrine of the common law in the case of *Wood v. Dummer,* 3 Mason, 308. The doctrine is referred to and expressly approved by this court in its opinion in the case of *King v. Elliott, supra.*

The capital stock of the bank in this case was a trust fund for the security of its creditors, and its charter expressly required that all such subscriptions for its capital stock should be paid in money. As was said by this court in its opinion in the case of *King v. Elliott, supra,* the essential basis needed

for a bank, as its capital stock, is money. So that the trust fund provided by the charter of the bank for its creditors was money. For the bank authorities to accept anything but money for subscription to the capital stock, would change the entire character of this trust fund. Any other rule of construction would necessarily violate the charter of the bank in one of its most essential provisions; in its most important provision for its creditors; and upon which the creditors of the bank had a right to rely for their security.

There is another line of decisions holding that where the charter of a corporation does not expressly require the subscription to the capital stock to be paid in money, but where the inference would be that the subscription should be paid in money, the payment should be in money or in .the equivalent of money. See *Tasker v. Wallace,* 6 Daly, 364. The appellee occupies the position of a debtor of the bank for his unpaid stock, and as a creditor of the bank for his claim for the furniture and legal services rendered to the bank. As a creditor of the bank, according to all the authorities, he is not in a situation to set up this claim as an off-set, or as a payment against his notes given for his subscription to the stock of the bank.

*D. A. Scott,* on the same side.

The debt which the appellant owed for his unpaid stock is a trust fund which equity will distribute among appellee's creditors. The proof shows a deficiency in the funds; each must, therefore, take his *pro rata* dividend. If the set-off is to be allowed, the appellant would appropriate the entire fund. *Thompson v. Reno, etc., Bank,* 19 Nev. 103; Zane on Banking, §§ 59, 69.

Appellee was one of the original parties who joined in the application for the charter under which this bank was subsequently organized. He attended and participated in the meet-

ings at which the organization was perfected. He was either elected or selected at one of these meetings to the office of vice-president. The stock subscribed by him was due and payable in cash before the bank open its doors for business. Neither he nor any of his associates paid into the coffers of the bank one single dollar of the stock subscribed for. No agreement whatsoever was entered into at that time between appellee and any of the officers or stockholders of the bank by or under which appellee had the right to subsequently deliver to the bank the personal property mentioned in payment for his stock subscription. The personal property referred to was never received by the bank until after the expiration of three months from the date of beginning business. There was never any entry upon the minutes of the bank books indicating just what had occurred between appellee and the bank in reference to this personal property. On or about April 10, 1899, three months after this personal property had been delivered to the bank, appellee received from the bank certificates of stock aggregating $2,000, and thereupon executed and delivered to the bank, manifestly for the payment thereof, his two promissory notes each for the sum of $1,000 payable at future dates. Appellee admits that these notes were given in payment for the stock subscribed for by him. He admits that these notes remained in the possession of the bank from the date of their execution until after its cashier absconded and the bank became insolvent. He admits that he took possession of these notes after the bank had ceased to be a going concern and retained possession of them thereafter. He further admits that he has never, since the execution of these two notes, paid the same, and that at the time he took possession of the same they were not marked paid or cancelled.

Article 3 of the charter of incorporation reads in part as follow: "The stock of said corporation may be paid for in cash or in monthly installments," etc. Used in this connection

the word, cash, according to the best authorities means money at command; ready money; coin. See Worcester's Unabridged Dictionary. It is clearly manifest from reading the charter that the word "may" must be construed as mandatory, for it has the same effect as if the word "shall" had been used instead. It is too clear to admit of doubt that in the use of the word "may" it was intended to impose a duty, and not simply a privilege or discretionary power upon the incorporators; and it is likewise clear that it was used in connection with and in reference to a matter in which the public was interested, and the public and third parties have, therefore, a claim *de jure* to have the power thus conferred upon the incorporators exercised. This charter is the law, so to speak, under which the incorporators therein named were granted the power to act and consolidate or incorporate, and in all such cases the word "may" and "shall" are invariably taken and considered as convertible terms. 14 Am. & Eng. Ency. of Law (1st ed.), 979; *Cook v. Spears,* 2 Cal. 412; *Tichnor v. McLelland,* 84 Ill. 471; *State v. State Canvassers,* 36 Wis. 498; *Walley's cases,* 11 Nev. 260; *Balentine's cases,* 45 Cal. 696; *Slein v. Franklin County,* 48 Mo. 167; *Alford v. Laurel, etc., Co.,* 86 Miss. 375.

The subscriptions for stock constitute the means of the company, on the faith of which credit is given; and each subscriber for stock is liable for all debts contracted during his ownership of stock; and for one year after he has transferred his ownership of stock he is liable for the amount of his subscription not paid according to its terms. *Vick v. La Rochelle,* 57 Miss. 602.

That eminent jurist, Chief Justice SHARKEY, seems to have settled this question in favor of appellant many years ago, and in discussing the charter of the Mississippi Railroad Company, which was a bank incorporated by the legislature, he used the following language: "The provisions of the original charter are, therefore, of little consequence in this controversy as we

.are now considering it as a bank. The ninth section of the supplemental act provided that books should be opened, at different places, for the subscription of certain definite amounts of bank stock, in addition to which, all the stock that had been subscribed, taken, and paid for under the charter, was converted into bank stock. Subscribers under the bank charter were required to pay at the time of subscribing $20 on each share taken, in specie, or in the notes of specie paying banks. The charter is silent as to how or when the balance shall be paid, but as the first section conferred all the usual rights, powers, and privileges of banking which were exercised by other banks, in the state, it may be assumed that the balance of the stock was to be paid at such times as the directors may see proper to call it in, which is the usual regulation as regards other banks." The payment of the capital stock in specie is an essential requisite to the existence of a bank. This capital stock constitutes the basis of the circulation. *King v. Elliott,* 5 Smed. & M. 428.

*Maynard & Fitzgerald, Brewer & Watkins,* and *George Winston,* for appellee.

As against a corporation, a stockholder as to his unpaid subscription sustains only the ordinary contract relation of a debtor to his creditor, and not a trust relation; and when sued on his unpaid subscription by the corporation or by one asserting its right, he can set up the bar of the statute of limitations, and such bar is a good defense. 26 Am. & Eng. Ency. of Law, 901, 941. The correctness of this proposition is distinctly recognized in *Robinet v. Starling,* 72 Miss. 652. In that case, a creditor of a corporation sued the administrator of a stockholder on the stockholder's statutory liability to the creditor, growing out of the fact that his subscription was partly unpaid. The court held that the claim of the creditor was an original, independent statutory right, and not a derivative one,

coming through the corporation; and that this right to sue did' not rest upon the existence of the relation of debtor and creditor between the stockholder and corporation, etc. The court. also held that the statute of limitations set up in that case against the creditor was not applicable to her claim, and did not bar her suit, but that it protected against the enforcement of the barred claim, namely, the claim of the corporation.

Where the contract of subscription to the stock of a corporation fixes the date of payment, the statute of limitations begins to run from that date; and is not stopped by the appointment of a receiver. *Williams v. Taylor,* 99 Mo. 306. Where the subscription to the capital stock of a corporation is payable presently, the statute of limitations begins to run from the time of the subscription. *Harris v. Gateway, etc., Co.,* 128 Ala. 659. A subscription may by the contract be presently due and' payable, and may be sued on by the corporation without any previous demand. 7 Thompson on Corp. 8659. The rights. and obligations growing out of these subscriptions rest upon contract; and in respect to such matters, the receiver stands. precisely in the shoes of the association, and can only enforce what it could have enforced at the date of his appointment. *Winters v. Armstrong,* 37 Fed. 508, 522. Whether the statute of limitation could be set up by the appellee in a suit by the creditors of the Jonestown Bank to enforce their statutory right against him, if his subscription to the stock of the bank was' unpaid, has nothing to do with this suit, and cannot affect his right to set up in this suit the bar of the statute of limitations. *McDonald v. Thompson,* 184 U. S. 71.

The testimony shows clearly that the relation of the appellee with reference to his subscription to the stock of the bank was adverse, not only to the bank, but to its creditors, at least. from the time of the appropriation of the value of his services and the delivery of his property to the bank in payment of' his subscription; and that from the time he disclaimed and'

repudiated any trust as to the creditors that might have arisen from his subscription at the time it was made. The statute of limitations would, therefore, be applicable to the present suit even if it could possibly be construed to be a suit to enforce the rights of the creditors. The record clearly shows the payment in full by appellee of his subscription by his services performed for, and the delivery of the property to the bank. Such payment was a good payment. Neither Code 1906, § 850, nor any other provision therein required subscriptions to stock to be paid in money. *Fargason v. Mercantile Co.,* 78 Miss. 65.

Unless a statute or the charter of a corporation not only requires the payment of subscriptions to be made in money, but imports a prohibition of the payment in anything else than money, a payment in property or services at a fair valuation, is a good payment. 2 Thomp. Corp. §§ 1604, 1605; *In re Beachy & Co.,* 170 Fed. 825.

Article 3 of the charter of the Jonestown Bank provides that the stock of said corporation may be paid in cash, or in monthly installments, or on call as the board of directors may from time to time direct. This provision does not require subscriptions to stock to be paid in money, because it is manifest that the words "may be paid in cash" are used only as opposed to payment on credit in installments, or on calls, and the plain intention of the provision is that the stock might be paid for in full at the time it was subscribed for, or in monthly installments, or call, as the board of directors might direct. The language of the provision is expressly permissive and not mandatory. Moreover, in the absence of a direct and express requirement in the charter on the subject, it cannot be supposed that the incorporators who applied for the charter intended by article 3 thereof to require subscribers to the stock of the corporation to pay their subscriptions in a way different from that required by the general laws under which the

charter was granted. Manifestly article 3 of the charter did not import a prohibition of the payment of the subscriptions to the stock in anything other than money.

But if article 3 of the charter should be construed to require subscriptions to the stock of the bank to be paid in money, it would not invalidate the payment made by appellee for his subscription. The bank could not have existed as a corporation without a charter, nor could it have carried on any business without property similar to that paid to it by appellee. Both the services rendered by the appellee in obtaining the charter and the property transferred to it were absolutely necessary to the successful carrying on of the bank's business. If it had not obtained the appellee's property it would have been forced to buy elsewhere. Not only was the property suitable for the bank, but it was necessary for the protection of depositors; and, moreover, at the time of appellee's subscription, it was stipulated that such subscription should be paid by his services and the property to be afterwards delivered to the bank. Such services and property were, therefore, manifestly the equivalent of money; and there being no prohibition in the charter against a payment of this kind, it was therefore a valid payment. 2 Thomp. Corp. §§ 1604, 1605. The case of *King v. Elliott,* 5 Smed. & M. 428, is not opposed to the above contention.

Appellee's subscription to the stock of the bank was by the contract itself to be paid for in services and property afterwards delivered by him to the bank. If this contract was illegal because it was not payable in money, then manifestly the appellee was not bound by the subscription, and the appellant had not right to recover in this suit. The court has no power to make a different contract with the parties. The appellee subscribed to the stock of the bank with the understanding that the whole of his subscription was to be paid by his services rendered and the property to be delivered.

If the services and property of the appellee, which the Jonestown Bank clearly accepted and received the benefit of, were not a payment of his subscription to the capital stock of the bank, then the bank was indebted to him for services and property practically from the time it began business. *American, etc., Co. v. Brower,* 32 South. 906; *Garnet, etc., Co. v. Sutton,* 3 Best & S. 321. Where a payment of a subscription is demanded or enforced for the benefit of the corporation itself, it is competent for the subscriber to set up in defense of the action a set-off or counterclaim. *Barnett's case,* L. R. 19 Eq. 449; *Bell's Appeal,* 115 Pa. St. 88, 2 A. S. R. 532. The appellee's debt against the bank (if he did not pay his subscription), was not an ordinary debt. It was for services for obtaining the charter of the bank necessary to its existence as a corporation and for property absolutely necessary to its business; and also for the protection and safety of the funds of the depositors. The services and property were for the common benefit of both bank and depositor. *Armstrong v. Law,* 27 Ohio L. J. 69; *Nichols v. Railroad Co.,* 83 Miss. 126; *Richberger v. State,* 90 Miss. 806; *Day v. State,* 91 Miss. 232.

Argued orally by *Frank Johnston,* for appellant.

SMITH, J., delivered the opinion of the court.

Appellant, receiver of the Jonestown Bank, instituted suit in the court below to collect from appellee an alleged unpaid subscription to the capital stock of said Jonestown Bank, amounting to $2,000. At the close of the evidence the court below charged the jury to find for appellee, and there was a verdict and judgment accordingly.

Appellee by his plea alleged, and the proof is, that he had paid in full his subscription to the capital stock of this bank in legal services rendered in and about the organization of the bank, and by a sale to the bank of a steel burglar-proof safe and

certain furniture and fixtures needed by the bank in the conduct of its business. His fee for legal services was $250, and the agreed price of the furniture and fixtures was $1,750. No question of set-off arises in this case; appellee's defense being payment. The claim of appellant is that appellee could not pay his subscription, and thus relieve himself from further liability thereon, in anything except money.

This bank was organized under the provisions of chapter 25, Code 1892. There is no provision in this chapter, nor in any amendment to any section thereof, relative to the manner in which the subscriptions to the capital stock of a corporation shall be paid, except section 850, which simply provides that a note, obligation, or security of any kind shall not be given or accepted in payment for such capital stock. Where the law or charter under which a corporation is organized contains no provision that the subscription to the capital stock thereof shall be paid in money, such subscription may be paid in property, provided same be done in good faith and the property be conveyed at a fair valuation. This principle is so well settled that a citation of authority therefor is unnecessary. Article 3 of the charter under which this bank was organized is as follows: "Article 3. The stock of said corporation may be paid for in cash or in monthly installments, or on check as the board of directors may from time to time direct, and the board of directors shall have the right to provide for the issuance of stock as payments are made and may receive payments in full of all stock subscribed for from any subscriber on such terms as may be fixed by general order of the board of directors."

The contention of appellant is that the word "cash" means "money," and that under the provisions of this section the stock of the bank could be paid for only in money. The word "cash" has a number of meanings, as will appear from an examination of the authorities, and in sales is frequently used

as a term meaning the opposite of credit.   Black's Dictionary.;
1 Words and Phrases, 996, 997, and authorities there cited;
6 Cyc. 700.   The particular meaning to be attributed to this
word must therefore be ascertained from the context in which
it is used.   This section of the charter deals with the sale by
the bank of its capital stock, provides the time at which pay-
ment therefor shall be made, and for the issuance thereof by
the board of directors.   It provides that stock "may be paid for
in cash or in monthly installments," etc., thus providing in
terms for a sale either for cash or on credit; and it is manifest
from this contention that the word "cash" is used, not to des-
ignate the medium of payment, but as a term meaning the op-
posite of credit.   The delivery of the stock under other lan-
guage of the section would be conditioned upon payment there-
for in full.   It follows, therefore, that appellee had paid his
subscription to the capital stock of this bank in full.

The judgment of the court is *affirmed.*

WHITFIELD, C. J., delivered the following dissenting opinion:
I am fully of the opinion, after the most careful considera-
tion, that section 3 of the charter under which this bank was
organized plainly means that the subscriptions of stock to this
bank should be paid, as is said, "in cash;" that is to say, either
all cash at one time, or in monthly installments of cash.   I do
not see how there is any room for construction.   The section
said "cash," and I thing it means just what it says—cash, and
cash only.   And it must be remembered that this particular
corporation is a bank, the function of which is to deal in money;
and cash is the life blood of its business.

My Brethren do not cite any cases whatever.   I think I
may sum the whole law up correctly by saying: First, that
cases may be found in which subscriptions to corporations, and
it may possibly be to bank corporations, may be made in legal
services or in property, under language not like the language

in section 3 of the charter, but under language allowing such a
construction; second, it is also possible that cases may be found
where the words "in cash" are used in one part of the act or
charter, and yet other words or provisions in the act may make
it clear that it was not intended that payment should be only
"in cash;" third, there may be some rare and exceptional
cases in which, though it is provided that the payment of stock
subscriptions should be in cash, nevertheless the language does
not necessarily prohibit anything but cash. But it seems to
me to be perfectly clear that the whole context of section 3,
taken together, takes this case out of the category of any of the
three classes of cases just above named, and means plainly that
these subscriptions to the stock of this bank shall be made in
cash, and cash only. I differ with great reluctance from my
Brethren, but I cannot, after the most protracted considera-
tion, take any other view of the meaning of said section 3 of
this charter.

In *King v. Elliott,* 5 Smedes & M. 428, this very question
was explicitly settled, as I understand that case. In that case
the charter provided twenty per cent of the first installment
of the stock should be paid in specie, or in the notes of specie-
paying banks. The charter was silent as to how the residue
should be paid; but, on construction of the charter, the court
held that this residue should also be paid in specie. Chief
Justice SHARKEY, speaking for the court, said: "By requiring
that the first installment should be paid in specie, it necessarily
followed that all other installments should be paid in the same
way, in the absence of a special provision directing otherwise.
Indeed, the payment of the capital stock in specie is an es-
sential requisite to the existence of a bank." To the same effect
are the following cases: *In re Metropolitan Carriage Co.,*
Law Rep. 14 Equity, 387; *Crocker v. Crane,* 21 Wend. (N.
Y.) 211, 34 Am. Dec. 228; *Haviland v. Chance,* 39 Barb. (N.
Y.) 283; *Henry v. Railroad Co.,* 17 Ohio, 187; and many other

authorities collected in the briefs of the learned counsel for appellant.

I close what I have to say, with a quotation from Am. & Eng. Ency. of Law (2d ed.), vol. 26, p. 839. It is there said: "Where payment in cash is expressly required, the corporation cannot receive anything else in the discharge of the liability for stock subscribed." Let it be specially noted that this is a suit by a receiver, to recover for and on behalf of creditors of a corporation.

For these reasons, I dissent from the judgment of the court.