STERLING VARNISH CO. INC. *v.* SONOM CO., INC., S. L. TAYLOR, GARNISHEE

No. 41986          October 23, 1961          133 So. 2d 624

*Ebb J. Ford, Jr.,* Gulfport, for appellant.

*White, Buntin & Martin,* Gulfport, for appellee.

ETHRIDGE, J.

This case involves a claim by a creditor of an insolvent corporation against a stockholder who purchased his stock with an assignment of an exclusive marketing contract for a manufacturing process. The issue is whether under the statute stock can be paid for in such property and contract rights, where the transaction is in good faith and there is no fraud. We hold that it can.

Appellee Sonom Company, Inc. (called Sonom) was incorporated under the laws of Mississippi in April 1957, for the general purposes of manufacturing, buying and selling paints and metal preservatives. The capitalization was $100,000, with 1,000 shares of $100 par value common stock, with a required, initial capital of $40,000. The sole stockholders and officers were Erickson, Nevins, Buntin, and S. L. Taylor who is the real appellee. Each of these persons purchased 25% of the stock. Taylor testified that he could not find the company's records. At the time of the hearing in 1960, Sonom was insolvent. Sonom owed Taylor and the other stockholders a "great

sum of money'', but he did not know the exact amount. Taylor said all of the stock was paid for.

R. R. Buntin, an attorney and one of the stockholders, stated that all of the stockholders fully paid for their shares. The company had to borrow additional operating capital from a bank. He and Taylor endorsed the notes and finally had to pay them. A man from Texas named Smith developed a formula for protective materials. The incorporators made a contract with him for the exclusive marketing and use of this product. When the corporation was organized, this contract was assigned by them to the corporation in consideration for the issuance of stock. With no records, the witnesses did not know how much stock they received. They did not know where Erickson, the president, was, but thought he had the records. Buntin said that Taylor and the other stockholders paid for their stock by assigning to the corporation this exclusive process and contract right, and by advancing to it considerable cash money; that the contract rights obtained from Smith were fully worth the stock which was issued to Taylor and other stockholders.

Sonom purchased from appellant, The Sterling Varnish Company, of Sewickley, Pa., a large amount of paint and preservatives to be used in its manufacturing process. On April 20, 1960, Sterling obtained a default judgment against Sonom for $8,811.42. It had a writ of garnishment issued against Taylor, who answered that he did not owe Sonom anything. Sterling filed a contest of Taylor's answer as garnishee, contending that he had not made a full discovery of the debt due and he knew facts relative to unpaid stock subscriptions to Sonom. Miss. Code 1942, Rec., Sec. 2806. Sterling had issued a subpoena duces tecum to Taylor for production of the corporate records, but he and Buntin stated they were lost and could not be found after diligent search. At the hearing appellant's counsel said that he could not proceed without these documents. After Buntin testified that the exclusive marketing rights of the Smith contract, assign-

ed to Sonom, were fully worth the stock issued, the court asked appellant's counsel if he desired to ask the witness any further questions concerning the value of the contract rights, which was consideration for the stock issued. To this appellant's counsel answered in the negative, but requested a continuance. This motion was overruled. The court held the garnishee's answer was supported by the evidence, overruled the contest of that answer, and entered an order in favor of the garnishee, dismissing him from the suit. This appeal is from that order.

Miss. Code 1942, Rec., Sec. 5332, provides that a stockholder is liable for corporate debts for the amount of any balances remaining unpaid for a stock subscription, and gives any corporate creditor a right to sue such stockholder. Code Sec. 5327, which presents the real issue, states: ''A note, obligation, or security of any kind given or transferred by any subscriber for stock in any corporation shall not be considered, taken, or held as payment of any part of the capital stock of the company.''

Appellant contends that appellee Taylor did not pay for the stock received by him; that transfer to the corporation of the Smith exclusive marketing contract was not a payment in the contemplation of the statute; and therefore under Sec. 5332 Sterling, as creditor, has a right of action against Taylor.

A corporation is not restricted to receiving money in payment for its stock, unless there is some requirement to this effect in its charter, or in the constitution or laws of the state. It may receive in payment therefor property, labor or services, provided the transaction is in good faith, and no fraud is perpetrated upon other stockholders or creditors. 11 Fletcher, Cyclopedia of the Law of Private Corporations (1958 Rev. Ed.), Secs. 5184, 5185; 13 Am. Jur., Corporations, Secs. 209, 210; 18 C. J. S., Corporations, Sec. 241. Stock may be paid for in various kinds of property, including valuable contract rights. 18 C. J. S., Corporations, Sec. 241; General Bond-

ing and Casualty Insurance Company v. Moseley, 110 Texas 529, 222 S. W. 961 (1920), reversing Tex. Civ. App., 174 S. W. 1031; Cole v. Adams, 92 Texas 171, 46 S. W. 790 (1898).

Code Sec. 5327 prohibits the payment for stock with a "note, obligation or security of any kind." If this were a *de novo* question in this state, a serious problem would arise as to whether this statute has the effect of prohibiting an assignment to a corporation of an exclusive marketing contract in payment for shares of stock. However, to find such a prohibition would necessitate holding that the statute was intended to preclude the general common-law practice in this respect.

Lee v. Cutrer, 96 Miss. 355, 51 So. 808, 27 L. R. A. (NS) 315, Ann. Cas. 1912B, 478 (1909), interpreted Sec. 5327 contrary to appellant's contention. A corporation sued a stockholder for his alleged unpaid subscription. He paid for it in legal services rendered and by transferring to the bank a safe and certain furniture and fixtures. The court construed Sec. 850, Code of 1892, which is the same as present Code Sec. 5327, as prohibiting a stockholder from giving his own note, obligation or security, but concluded that the statute did not prohibit a subscription being paid for in property and services, "providing same be done in good faith and the property be conveyed at a fair valuation." The general rule elsewhere was relied upon. A provision in the charter for payment in cash was interpreted to mean the opposite of credit, and not to negative payment in services and property. *Lee* was cited with approval, on a different issue, in Hutton v. Hutton, 239 Miss. 217, 234, 119 So. 2d 369 (1960).

The interpretation of Code Sec. 5327 in *Lee* has been generally recognized by the bar over the years. The reason for it is said to be that there is no need for the roundabout process of first issuing the stock for money, and then paying out the money for the property, labor or services. Corporations must own property for their business,

and it would be a useless formality to receive the money in payment for the stock and return it again in payment for the property. 11 Fletcher, ibid., Sec. 5185; Wallstein, The Issue of Corporate Stock for Property Purchased— A New Phase, 15 Yale L. J. 111 (1906). Fletcher states that the weight of authority holds that payment for stock with property or services "is not prohibited by a provision that stock shall not be issued except upon payment in full, or payment of the par value, or payment in cash." 11 Fletcher, ibid., pp. 526-527. Hence Lee v. Cutrer is in accord with the general approach to this question by courts of other states, and has some practical reasons behind it.

Cases cited by appellant are not apposite. Graves, Inc. v. Commissioner of Internal Revenue, 202 F. 2d 286 (C. C. A. 5th 1953), involved a holding that certain notes given to a corporation were not invested capital or a capital addition for purposes of computing the excess profits credit. In fact, the court there recognized the rule stated in *Lee* as to payment in property. 202 F. 2d at 288. Parenthetically, subsequent to the facts of this case, the Legislature in 1960 amended Code Sec. 5327 so as to expressly provide that a corporation could issue stock for money, labor or property actually received; and in the absence of fraud, the judgment of the directors as to the value of property purchased is conclusive. To minimize the danger of watered stock, the 1960 amendment further directs that corporate reports should not state that the stock was issued for cash but issued for property purchased. Miss. Laws 1960, Ch. 182. The 1960 amendment is not pertinent here except to indicate that the Legislature apparently recognized the *Lee* interpretation of Sec. 5327, and sought to tighten up its provisions for the protection of creditors and stockholders.

A payment for stock in property or services must have been made in good faith and without fraud. The testimony here shows that those conditions were met. Moreover, appellee's evidence is rather vague

on valuation in exact terms, but the witnesses were defi-
nite in general as to adequate value and good faith. This
was an issue for the trial court. Moreover, appellant
offered no evidence to indicate any lack of good faith,
or fraud by the stockholders. 11 Fletcher, ibid., Sec.
5185.

Affirmed.

*McGehee, C.J.*, and *Kyle, Arrington* and *Gillespie, JJ.*,
concur.