188 So.2d 758 (1966)
R.M. SMITH et al.
v.
MISSISSIPPI LIVESTOCK PRODUCERS Association.
No. 44015.
Supreme Court of Mississippi.
July 8, 1966.
*759 Watkins, Pyle, Edwards & Ludlam, Marvin A. Cohen, Jackson, for appellants.
Creekmore & Beacham, Jackson, for appellee.
PATTERSON, Justice.
This is an appeal by R.M. Smith, Hinds Packing Company, Inc., John T. Bridgers, and B & B Packing Company from a decree of the Chancery Court of Hinds County which made an award to the complainant, Mississippi Livestock Producers Association, in the sum of $12,000, with interest, against R.M. Smith and imposed a lien on 33.15 acres of land for the satisfaction of such decree.
This suit, which was filed in April 1964, sought to hold Smith, the president, director, and major stockholder of Hinds Packing Company, Inc., hereinafter referred to as Hinds, and D.R. Corey and H.B. McCluer stockholders of Hinds, individually and personally liable for an indebtedness of such corporation to Mississippi Livestock *760 Producers Association. It also sought to establish a lien on 33.15 acres of land, which had been conveyed to the corporation by Smith, and which was later subjected to a deed of trust in his favor. This deed of trust was foreclosed and Smith became the purchaser thereof. He then sold to Bridgers, who conveyed to B & B Packing Company, who reconveyed to Bridgers. The theory of the imposition of the lien against this land was that the trust conveyance for the benefit of Smith was fraudulent as to the other creditors of Hinds; that the conveyance was an attempt to hinder, delay, or defraud the complainant and other creditors of Hinds and to prefer Smith, the principal officer of such corporation, over the other creditors; that Bridgers had actual knowledge of these claims at the time the property was conveyed to him and he took subject thereto.
The complainant alleged additionally that this same tract of land was initially conveyed to the corporation in consideration of the issuance of stock to Smith and that the land was grossly over-valued by Smith and the other directors of Hinds, resulting in the stock being "watered" and not representative of its par value at the time of issuance, to the detriment of the creditors.
After an extended trial, the chancellor found that Smith was a fiduciary and that as such he had the burden of proof as to his good faith in the transactions. The court further found as follows:
The Court does not hold the Defendant, Rayvon M. Smith, to the true or actual value rule but does find that he should have fixed a fair and reasonable value on his property and in good faith. The fact that Mr. Smith took security for the debts of the corporation, Hinds Packing Company, Inc., to himself, and the foreclosure of the deeds of trust before due dates does not indicate good faith. The only conclusion is that he was trying to close the gate on someone, and take care of himself.
After carefully considering all the evidence the Court is of the opinion that the 33.15 acres of land conveyed as part payment for the stock purchased was over valued in the sum of $12,000.00. According to all the evidence $8,000.00 is a very liberal valuation to be placed on said land. The valuation placed on the improvements was more than its actual value but was not greatly exaggerated.
Therefore judgment will be granted against Rayvon M. Smith in favor of Mississippi Livestock Producers Association, the Complainant, in the sum of $12,000.00. The deeds of trust and the foreclosures thereof will be set aside and held for naught. The payment of said sum will be secured by a lien on the land and property conveyed therein to Mr. Smith, the B & B Packing Company, and Mr. John T. Bridgers. There is no doubt about the Defendant, Mr. Bridgers, having actual notice of this debt because he protected himself therefrom and secured title insurance.
The Defendants, D. Russell Corey and Hugh V. McLuer, Jr., were not acting in the same capacity with the corporation as did Mr. Smith, and kept their dealings at arms length and the said suit is hereby dismissed as to them.
From a decree taken in accordance with the chancellor's opinion, Smith, Bridgers, B & B Packing Company, and Hinds Packing Company, Inc., appeal to this Court, assigning as error:
(1) The appellee has failed to meet its burden of proof as to the issues in the case, and especially has it failed to prove any fraud on the part of defendant R.M. Smith and Hinds;
(2) There is no substantial evidence that the property transferred to Hinds by R.M. Smith, its president, and one of the directors, pursuant to corporate resolution, was transferred at an "unfair" price, and appellee did not prove fraud or bad faith on the part of the directors;
*761 (3) The lower court erred in finding liability on the part of Smith for allegedly transferring to the corporation property valued below the par value of stock issued to him;
(4) The court erred in holding the corporation's execution of the deed of trust to Smith in February 1959, and the subsequent foreclosure thereof evidenced a lack of good faith on the part of its president, Smith, in October 1958, when the value of the land transferred to the corporation was formally determined at a joint meeting of the board of directors and stockholders; and
(5) The lower court erred in impressing a lien on the foreclosed property to satisfy the personal judgment against Smith.
The appellee cross-appeals and assigns as error the action of the lower court in limiting the lien of cross-appellant to the sum of $12,000 instead of extending it to the full amount of its claim as a judgment creditor in the amount of $14,079, with interest, from March 7, 1961.
Hinds was chartered under the laws of this state on September 24, 1958. Prior thereto the defendant Smith and one Beck and Harrison had discussed the idea and made plans for forming a meat-packing company. Harrison and Beck, together with Smith, were original stockholders, directors, and officers of the corporation, but were not made parties to this suit. At about this time the original promoters of Hinds approached D.R. Corey and H.B. McCluer, the owners of Corey-McCluer Company, Inc., a meat-packing concern, with regard to transferring to Hinds their business and assets in return for stock in the corporation, and at the organizational meeting, though Corey and McCluer were not original stockholders, an agreement for exchange of stock for the assets of Corey-McCluer Company, Inc., was consummated whereby Corey and McCluer received $7,000 each in stock for the assets and good will of their company, and Hinds assumed the liabilities of Corey-McCluer Company, Inc.
The operation of Hinds was a joint enterprise by the original incorporators and Corey and McCluer. It was thought that by combining their several talents and assets a successful meat-processing and packing company could be established. Smith had considerable experience in a successful grocery business; Beck had much experience in the livestock business; Harrison had experience in the grocery business, and also, through business associates, was able to purchase building materials and supplies at discount; and both Corey and McCluer had experience in meat processing and packing, as well as the advantage of having established trade routes in the area as a result of their former business. There were other stockholders; however, those mentioned were largely the company, with Smith being its president and the prime financial backer thereof, as other than Corey-McCluer Company's assets, largely meat-packing equipment and encumbered real estate, he was the only one to contribute both property and money in any great amount to the concern, the others contributing primarily their talents and labor in return for stock.
As mentioned, Smith transferred to the company 33.15 acres of land for the use of Hinds as a plant site and upon which a packing house was constructed. The minutes reflect that the directors, Beck, Harrison, and Smith, made a finding as to the value of this land in the amount of $20,000 or approximately $600 per acre.
Hinds began doing business in October 1958. It was never successful due to several factors, one of which was an inadequacy of operating capital. During this interval the corporation attempted to obtain operating funds from the First National Bank of Jackson, the Deposit Guaranty Bank of Jackson, as well as the Small Business Administration, in the approximate figure of from $40,000 to $50,000 to no avail. Hinds purchased in excess of *762 $75,000 worth of livestock from Mississippi Livestock Producers Association during its business life. These purchases were made on an open account basis. However, the account became in arrears to the extent that normal credit was declined to Hinds and it was put on a short-term credit or cash basis due to the assurance of Smith to Massey, the secretary-treasurer of Mississippi Livestock Producers Association, that Smith would personally pay the account of Hinds.
On February 26, 1959, after the attempt to obtain operating capital from the banks mentioned and the Small Business Administration had failed, the directors of the corporation, which included Smith, adopted a resolution to the effect that Smith had on various occasions made loans to the corporation for its purposes, and since it had been the intent of the parties at all times that such loans be treated as indebtednesses of the corporation, and that it desired to evidence the indebtedness to date by the execution of a promissory note for said amount, and since the corporation desired to induce Smith to continue his aid to the corporation by making loans when needed, and to induce Smith to continue his endeavors to make the business a profitable concern, it was resolved that such indebtedness be evidenced by a note and that the same be secured by a deed of trust on the real and personal property of the corporation. Pursuant to this resolution, $12,500 of 15-year debenture bonds, issued to Smith at the inception of the corporation, and due by the corporation to Smith, were cancelled, and this amount plus the open account owing to Smith were consolidated and incorporated into a promissory note for $23,991.26 due on or before January 1, 1962, and this was secured by a deed of trust on all of the property of the corporation. This deed of trust was dated February 26, 1959, and was recorded the next day. There was no contemporaneous advancement of funds by Smith at this time. However, over a period of the subsequent five months Smith advanced to Hinds the sum of $11,624.44.
Thereafter, at a meeting of the directors held on August 25, 1959, it was resolved that an additional promissory note in the sum of $11,274.86 be authorized to Smith. Thereupon, a renewal deed of trust covering all of the property of Hinds was made to Smith to secure an indebtedness of $35,266.12, this being the pre-existing debt of $23,991.26 secured by the previous deed of trust, plus the subsequent advances of $11,274.86. This deed of trust was executed "as of the 28th day of August, 1959" but it was not acknowledged and filed for record until September 26, 1960. The indebtedness secured thereby was due and payable on or before January 1, 1962.
Hinds ceased doing business on September 8, 1959, due to the lack of funds.
The deeds of trust were foreclosed by Smith on December 24, 1960, and he became the purchaser of the property for the sum of $38,250. In February 1961 Bridgers purchased the property from Smith for the sum of $39,500. Bridgers had actual notice of the claim of Mississippi Livestock Producers Association, as he was advised thereof; in fact, the existence of the open account resulted in an escrow agreement to a title insurance company whereby $13,000 of the purchase price paid by Bridgers to Smith was held by the insurance company to indemnify the purchaser in the event any loss was suffered as the result of such account.
On March 7, 1961, Mississippi Livestock Producers Association reduced its open account against Hinds to judgment in the sum of $14,079, which included interest to that date.
We are of the opinion that the lower court correctly held Smith to be a fiduciary. He was the president, director, and major stockholder of the now defunct corporation. Under these circumstances the actions of the corporation in dealing with its primary officer were suspect. The burden of proof was upon Smith to establish his utmost good faith in these transactions. *763 The rule is stated in 19 Am.Jur.2d § 1578 at 947-948 (1965) as follows:
It is generally held that in the absence of a statutory restriction a corporation may, although insolvent, secure an officer or stockholder for a contemporaneous loan made to it fairly and in good faith. This is especially true in the case of a corporation which, though insolvent, is nevertheless a going concern and the officers of which intend, with reasonable expectations of success, that it shall continue business as a result of the loan. The burden, however, is on the secured director, officer, or stockholder to show the good faith of the transaction.
And in 31 A.L.R.2d § 6 at 672-676 (1953) the majority rule is stated as follows:
Although in some instances the courts, in dealing with the validity of a secured loan transaction between a solvent or technically insolvent corporation and its officer, director, or stockholder, have held that the lender, despite his relationship with the corporation, stands in a position no different from that of a stranger, the prevailing view is to the contrary. Thus, it is said that such transactions are fundamentally suspect, and will be closely scrutinized; they must be open, and free from fraud or impropriety. The officer, director, or stockholder making the loan must act in good faith, must be free from all suspicion, and may seek no unfair advantage or undue benefit  in short, there must be no conflict in interest between the lender and borrower. The terms of the loan must be for the corporation's benefit; a real need for the loan must have existed, and the funds obtained by the loan must be for use in the business of the corporation.
Burden of proof.
In establishing the validity of a secured loan transaction between a corporate officer, director, or stockholder making the loan, and the corporation furnishing the security therefor, the burden of proof of the lender's good faith and of the "perfect justice" of the transaction rests upon the officer, director, or stockholder. As stated by one court:
"The burden is imposed on (the director) to show by a preponderance of proof that he acted bona fide, and that the corporation got the benefit of his act to the extent charged. This rule of the law is not to prevent directors of a corporation from dealing with it, but to prevent them from claiming to have done so when they had not, as well as to prevent their overreaching the trust which they had essayed to protect."
We are of the opinion that the chancellor's finding that the action of Smith "does not indicate good faith" is in reality a finding that Smith did not overcome the presumption of fraud imposed by law as the result of his fiduciary relationship. Griffith, Mississippi Chancery Practice § 589 (1950).
The finding of the chancellor of an over-valuation of the 33.15 acres of land in the sum of $12,000 was supported by the preponderance of the evidence and certainly we cannot say that his finding in regard thereto was manifestly wrong. The appraiser's report of the value of the land, which was prepared at the request of Smith for the purpose of obtaining a loan from the First National Bank, was erroneously introduced into evidence over objection, as it was pure hearsay, the appraisers making the report were not introduced as witnesses to authenticate the report or to subject themselves to cross-examination in regard thereto. There is, however, sufficient evidence sans this report to support the finding of over-valuation of the land. While it is true that the directors other than Smith were not found to have been lacking in good faith, this does not mean that Smith is exonerated from his lack of good faith, particularly as he was the dominant factor in the organizational meeting wherein a *764 value of $20,000 was placed on the property. He had the burden of proving the utmost good faith in this transaction which, as found by the lower court, he failed to do. A judgment in the amount of $12,000 was awarded the complainant, this being the extent the stock was "watered" or the amount the stock was not fully paid for.
The appellant contends, however, that since there is no evidence to indicate that the complainant relied upon the ostensible capital of the corporation for the extent of credit, there can be no recovery by the complainant for the difference between par value of the stock and the property paid in consideration. He cites Fletcher Cyclopedia Corporations (Permanent Edition) § 5238 at 721 (1958 Rev. Vol.), wherein it is stated:
It is only those creditors who can fairly allege that they have relied, or whom the law presumes to have relied, upon the amount of capital stock of the company, who have a right to make such inquiry, or in whose favor equity will impress a trust upon the subscription to the stock, and set aside a fictitious arrangement for its payment. * * *
However, Mississippi Code Annotated section 5332 (1956) (Repealed Miss. Laws 1962 ch. 235 § 149) provides:
In all corporations each stockholder shall be individually liable for the debts of the corporation contracted during his ownership of stock, for the amount or any balance that may remain unpaid for the stock subscribed for by him, and may be sued by any creditor of the corporation; and such liability shall continue for one year after the sale or transfer of the stock. * * *
In view of the statute we are of the opinion that this contention is not well taken.
Stock may be paid for by property or services, but the property conveyed in exchange therefor, or services offered, must be fairly and adequately valued in relation to the par value of the stock received. The burden of proving utmost good faith rests upon the person transferring his property or offering his services of showing good faith and fair valuation. Sterling Varnish Co. v. Sonom Co., 241 Miss. 810, 133 So.2d 624 (1961), and Lee v. Cutrer, 96 Miss. 355, 51 So. 808, 27 L.R.A.,N.S., 315 (1909). We conclude, therefore, that the assignments of error in regard to there not being sufficient evidence to find Smith a fiduciary; that there was no substantial evidence that the property transferred to the corporation by Smith was over-valued; and that the finding of the court of liability on the part of Smith for such transfer below the par value of stock issued to him are not well taken.
The appellant next contends that the court erred in holding the corporation's execution of a deed of trust to Smith in February 1959, renewed in August of the same year, and the subsequent foreclosure thereof in December 1960, showed there was a lack of good faith on the part of Smith in October 1958, when the value of the land transferred to the corporation was formally determined at a joint meeting of the board of directors and stockholders. He argues that the two separate events could not constitute evidence of bad faith. We have heretofore held that there was a lack of good faith on the part of Smith at the time of the transfer, i.e., the organizational meeting, and for this reason we are of the opinion that this assignment of error is not well taken. The evidence indicates the corporation never made money and was in extremely poor financial condition at the time the first deed of trust was made to Smith. As a matter of fact, the corporation had exhausted every effort to obtain a loan for operating capital through local banks and the Small Business Administration. It was at this time the corporate resolution, in which Smith participated, was adopted authorizing the transfer. The recordation of this deed of trust on September 27, the day following its execution, though contended to be an absolute *765 showing of good faith, is only an indicia thereof, and Smith was not relieved of the burden of showing the utmost good faith in taking this deed of trust, which carried all of the assets of the corporation, to himself when there were other creditors. The second deed of trust to Smith by the corporation was made on August 28, 1959, for advances made during the preceding five months in excess of $11,000. Though substantial, this amount was inadequate to offset operating expenses for the same period. This trust deed, though not acknowledged and filed for record until September 26, 1960, was executed on August 28, 1959, only eleven days prior to the discontinuance of business on September 8, 1959, and at a time when insolvency of the corporation was apparent, and there was little, if any, reasonable expectation of the business continuing as a going concern. For the president, director, and major stockholder of the corporation to take to himself security for advances to the corporation under these circumstances at a time when there were other creditors, is unconscionable and cannot be condoned, as it could not be other than a bold attempt to secure the indebtedness of the corporation to himself to the exclusion of other creditors. Lamb v. Russell, 81 Miss. 382, 32 So. 916 (1902); King v. Wooldridge, 78 Miss. 179, 28 So. 824 (1900); and Love Mfg. Co. v. Queen City Mfg. Co., 74 Miss. 290, 20 So. 146 (1896).
The contention that Bridgers was a bona fide purchaser of the property is not well taken as the record reflects he had knowledge of the open account owing to Mississippi Livestock Producers Association. He was also advised thereof and precautionary steps were taken by way of an escrow agreement in order to indemnify him in the event of loss by reason of this open account.
The cross-appellant contends that the court erred in limiting the judgment against Smith to the difference between the par value of the stock and the property conveyed therefor which was found by the lower court to be the sum of $12,000 exclusive of interest. It contends that Mississippi Code Annotated section 1327 (1956) authorizes the subjection of property fraudulently conveyed to the full satisfaction of the judgment creditors. Section 1327, in part, is as follows:
"A creditor may attack fraudulent conveyances, etc.
The said court shall have jurisdiction of bills exhibited by creditors who have not obtained judgments at law, or, having judgments, have not had executions returned unsatisfied, whether their debts be due or not, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of hindering, delaying or defrauding creditors; and may subject the property to the satisfaction of the demands of such creditors as if complainants had judgments and execution thereon returned "no property found." * * * The creditor in such case shall have a lien upon the property described therein from the filing of his bill, except as against bona fide purchasers before the service of process upon the defendant in such bill."
We are of the opinion that the deeds of trust were not made in good faith and were for the purpose of preferring the defendant Smith over the other creditors to their hinderance and delay, and as such were fraudulently made, and that the court erred in not establishing a lien against the property to the extent of the judgment obtained on March 7, 1961, with interest from such date.
Affirmed in part on direct appeal and reversed and rendered on cross appeal.
All Justices concur.