596 P.2d 1215 (1979)
Robert L. CONNELL and Linda P. Connell, Executrix of the Estate of Marion P. Walsh, Plaintiffs-Appellees,
v.
SUN OIL COMPANY (Delaware), a Delaware Corporation, Defendant-Appellant.
No. 77-949.
Colorado Court of Appeals, Div. I.
March 29, 1979.
Rehearing Denied April 26, 1979.
Yegge, Hall & Evans, Raymond J. Connell, Denver, for plaintiffs-appellees.
*1216 Gorsuch, Kirgis, Campbell, Walker & Grover, C. E. Eckerman, Brian T. Campbell, Denver, for defendant-appellant.
SILVERSTEIN, Chief Judge.
Defendant, Sun Oil Company, appeals from a judgment awarding $25,018 damages to plaintiffs, Robert L. Connell and Marion P. Walsh (Linda P. Connell, executrix, by substitution), for defendant's breach of contract. Defendant admits the breach and its liability therefor, but contests the amount of damages. We affirm the judgment as to liability, but reverse, and remand the cause for a new trial on the damages issue.
The dispute arises from the following facts. Plaintiff Marion P. Walsh acquired a federal oil and gas lease to approximately a thousand acres of land in Moffat County, Colorado. On September 24, 1974, Walsh assigned her lease interest to plaintiff Robert L. Connell, effective October 1, 1974, retaining an overriding royalty interest. The same day plaintiff Connell assigned his interest to defendant, effective October 1, 1974. Connell also retained an overriding royalty interest.
The lease assignment agreement contained the following reassignment clause, drafted by plaintiff Connell:
"In the event Assignee desires to surrender said Lease as to all or any part of the acreage covered thereby, Assignee agrees to notify Assignor by registered mail at least thirty (30) days in advance of the anniversary date specified in said Lease.. . . Assignee's liability shall be limited to the amount paid as cash consideration for this Lease."
Defendant allowed the lease to expire on October 1, 1976, for nonpayment of rent without notifying plaintiffs of its intention not to maintain the lease. Thus, plaintiffs lost their entire interests in the Moffat County lease.
The consideration paid by defendant to Connell was $25,018 of which $12,500 was paid by check, and the balance by the assignment to Connell of United States leases on approximately 6,259 acres of land in Teton County, Wyoming.
In addition to the above stipulated facts, the evidence establishes that, in June 1974, Connell and defendant began negotiations for the assignment to Connell of defendant's lease on the Wyoming land. In September 1974, before that deal was closed, negotiations for the assignment of plaintiffs' lease to defendant were begun. It was ultimately agreed that Connell would pay $12,518 for the assignment of the lease on the Wyoming land, and that defendant would pay $25,018 for the assignment of Connell's lease. At defendant's request, rather than exchange the two checks, Connell agreed to take the assignment of defendant's lease in part payment of the consideration for the assignment of his lease to defendant.
At trial, defendant admitted that it had breached the contract, but asserted it was only liable for the market value of the lease on the date of the breach, but in no event could its liability exceed the $12,500 paid by check. Plaintiffs contend that the provision that defendant's "liability shall be limited to the amount paid as cash consideration" for the lease was a liquidated damages clause which entitled them to the full consideration of $25,018.
The trial court ruled that the reassignment clause was a liquidated damages provision; that the amount of the liquidated damages was $25,018, the full consideration paid for the lease; that, because the liability in the event of breach was fixed and certain, defendant was liable for interest on the debt from the date of breach; and that plaintiffs were entitled to costs.
Inasmuch as the facts are undisputed and the pertinent documents are before us, we are not bound by the trial court's findings and conclusions and may resolve the issues as a matter of law. Stephenson v. Stephenson, 134 Colo. 96, 299 P.2d 1095 (1956); Southeast Colorado Cooperative v. Ebright, 38 Colo.App. 326, 563 P.2d 30 (1976).
In construing a contract, the words used generally should be accorded *1217 their plain and accepted meaning. Hammond v. Caton, 121 Colo. 7, 212 P.2d 845 (1949); Horton-Cavey Realty Co. v. Spencer, 37 Colo.App. 96, 544 P.2d 998 (1975). The words "liability shall be limited to. . ." create a limitation of liability, and do not constitute a liquidated damages clause.
Unlike a liquidated damages provision, the phrase does not create an unconditional promise by defendant to pay a definite sum in the event of a breach, neither does it set the minimum amount which plaintiffs shall recover if defendant breaches any one or more of the promises contained in the reassignment clause.
"An agreement limiting the amount of damages recoverable for breach is not an agreement to pay either liquidated damages or a penalty. Except in the case of certain public service contracts, the contracting parties can by agreement limit their liability in damages to a specified amount, either at the time of making their principal contract, or subsequently thereto. Such a contract does not purport to make an estimate of the harm caused by a breach; nor is its purpose to operate in terrorem to induce performance." Restatement of Contracts § 339, Comment g.
Wedner v. Fidelity Security Systems, Inc., 288 Pa.Super. 67, 307 A.2d 429 (1973); Morgan Co. v. Minnesota Mining & Manufacturing Co., Minn., 246 N.W.2d 443 (1976); Wheeler v. Oppenheimer, 140 Cal.2d 497, 295 P.2d 128 (1956).
The parties having agreed to limit defendant's liability in the event of breach of the reassignment clause, we turn to the amount of that limitation. The trial court construed "cash consideration" to be the total purchase price, that is, the payment by check plus the value of the Teton County lease transferred to plaintiff Connell for the Moffat County lease assignment. We agree.
Defendant contends that "cash" means "money". In the narrow sense this is correct. However, in commercial transactions the word has been construed in several ways, depending on the circumstances in which it is used. It has been interpreted as the antonym of "credit", Hartwig v. Rushing, 93 Or. 6, 182 P. 177 (1919); Lee v. Cutrer, 96 Miss. 355, 51 So. 808 (1909). "The words, `in cash,' mean a cash sale, as distinguished from an executory contract." Duprey v. Donahoe, 52 Wash.2d 129, 323 P.2d 903 (1958). Further, it has been held that in a cash sale, payment may be made in property, if the buyer and seller so agree. Scott v. Ralph Horgan, Inc., 36 N.Y.S.2d 822 (1942). See Sterling Varnish Co. v. Sonom Co., 241 Miss. 814, 133 So.2d 624 (1961).
Here, the parties entered into two separate transactions. In the first, plaintiffs agreed to pay defendant two dollars an acre for the assignment of a lease, and in the second, defendant agreed to pay plaintiffs twenty-five dollars an acre for their lease assignment. The two deals were closed together and, as an accommodation to defendant, plaintiffs agreed to accept defendant's assignment in part payment, with the balance being paid by a check for the difference in the agreed considerations.
Since we are concerned with the interpretation of the words "cash consideration", and not merely the word "cash", we must look to the agreement relative to this particular assignment. The agreed purchase price was $25,018. This was the cash consideration, as contrasted with the future payments to be made on the retained overriding royalties which payments were contingent on possible future production. See State ex rel. Fatzer v. Board of Regents, 176 Kan. 179, 269 P.2d 425 (1954).
The lease assigned to the plaintiffs had a definite value, equivalent to the money for which it was substituted, and makes the situation here analogous to that in Las Animas County High School District v. Raye, 144 Colo. 367, 356 P.2d 237 (1960), in which the Supreme Court stated that a cash asset "`should be something which has a definite and certain present value, equivalent to cash.'" Therefore we hold that defendant's limit of liability is $25,018.
However plaintiffs are not automatically entitled to recover the full limit *1218 of liability. Plaintiffs have the burden of proving their actual damages arising from the breach. The measure of such damages is the fair market value of the leases on the date of the breach. Tenneco Oil Co. v. Gaffney, 369 F.2d 306 (10th Cir. 1966); McLaughlin v. Ball, 431 S.W.2d 305 (Tex. 1968).
In view of the above determinations, defendant's contention relative to interest is now moot. However, since defendant has admitted the breach of the contract, and is liable for the damages, if any, which may be established by plaintiffs, subject to the contract limitation, the trial court was correct in awarding costs to plaintiffs.
The judgment is affirmed as to the liability of defendant, reversed as to the amount of damages, and the cause is remanded for a new trial on the issue of damages, consistent with the views expressed herein.
COYTE and SMITH, JJ., concur.