HOUSTON, Justice.
James C. Lynch filed this declaratory judgment action against Asset Protection *345 Associates, Inc. (“Asset”), seeking to declare that Asset was without authority to invalidate the issuance of 25,000 shares of its common stock which were allegedly issued to him in exchange for the transfer of the ongoing business and contracts of his sole proprietorship. Lynch also sought preliminary and permanent injunctive relief to prevent Asset from invalidating the shares in dispute. After hearing ore tenus testimony from the three incorporators, namely Lynch, W.R. Heflin, and Woody Kelly, the trial court, sitting without a jury, declared the issuance of the 25,000 shares of Asset’s common stock to Lynch null and void. Lynch appeals from this judgment. We reverse and remand.
In declaring the issuance of the 25,000 shares of Asset common stock to be null and void, the trial court ruled, as a matter of law, that the contracts transferred to Asset, in exchange for the issuance of the stock, did not satisfy the applicable constitutional and statutory requirements relating to consideration for the issuance of corporate stock. We disagree. Although there are disputed facts in this case, we reverse because the trial court misapplied the law to the facts before it; therefore, the ore tenus rule has no application in this case. Foy v. Foy, 447 So.2d 158 (Ala.1984).
The evidence shows that for six to seven months prior to the incorporation of Asset, Lynch owned and operated “Asset Protection Associates,” a sole proprietorship which provided guard and security services to business entities on a contract basis. On behalf of his sole proprietorship, Lynch executed contracts with Chrysler Corporation, First Alabama Bank, and several smaller businesses. He was providing security services for these industries and businesses at the time he, Heflin, and Kelly incorporated Asset. Lynch was actively negotiating with several other businesses at or prior to the date of incorporation. On August 28, 1973, Asset was duly incorporated under the laws of Alabama for the general purpose of selling security, protection, and investigative services to business, industry, and government. The total authorized capital of Asset was $50,000 and 50,000 shares of $1.00 par value common stock were authorized to be issued. The original shareholders and officers of Asset, as previously mentioned, were Lynch-President, Heflin-Vice President, and Kelly-Secretary/Treasurer. Lynch was issued 3,000 shares and Kelly and Heflin were each issued 2,000 shares of the common stock of Asset. In addition, Lynch was issued another 25,000 shares of Asset common stock. Lynch and Heflin testified that the incorporators agreed that Lynch was to receive the 25,000 shares in exchange for the transfer of the business and contracts of his sole proprietorship. Kelly testified that it was his understanding that Lynch would pay $25,000 cash in exchange for the issuance of the 25,000 shares of stock. A stock certificate, representing the issuance of 25,000 shares to Lynch, was signed by Lynch as President and by Kelly as Secretary/Treasurer, and the issuance of this certificate was confirmed by the corporate stock ledger. In recent years action was taken by the present shareholders of Asset to “invalidate” Lynch’s 25,000 shares of Asset stock. Lynch filed this action.
Article 12, § 234, Alabama Constitution 1901, provides, in pertinent part, that: “No corporation shall issue stock or bonds except for money, labor done, or property actually received; and all fictitious increase of stock or indebtedness shall be void....”
Further, Tit. 10, § 21(36), 1940 Code (Recompiled 1958) (Cum.Supp.1973), which was applicable at the time of the disputed issuance, provided:
“The consideration for the issuance of shares may be paid, in whole or in part, in money, in other property, tangible or intangible, or in labor or services actually performed for the corporation. When payment of the consideration for which shares are to be issued shall have been received by the corporation, such shares shall be deemed to be fully paid and non-assessable.
*346 “Neither promissory notes nor future services shall constitute payment or part payment, for shares of a corporation.
“In the absence of fraud in the transaction, the judgment of the board of directors or the stockholders, as the case may be, as to the value of the consideration received for shares shall be conclusive.” (Emphasis added.)
The trial court applied § 234 of Alabama Constitution 1901 and Tit. 10, § 21(36), 1940 Code, to the facts of this case, and ruled that the requirements, as set out therein, “cannot be satisfied by the transfer of an executory contract which requires the performance of services in fu-turo.” We disagree and for the following reasons hold that the contracts transferred by Lynch, in exchange for the issuance of the disputed stock, were “valuable contract rights,” and, as such, could constitute valid consideration for the payment of stock.
Pursuant to Tit. 10, § 21(36), a corporation could issue paid-up shares of stock in exchange for property, tangible or intangible. This principle, that stock may be paid for in property, comprehends various kinds of property, including “valuable contract rights.” Sterling Varnish Co. v. Sonom Co., 241 Miss. 810, 133 So.2d 624 (1961); General Bonding & Casualty Insurance Co. v. Moseley, 110 Tex. 529, 222 S.W. 961 (1920). The term “property” is not used in its broad sense, which includes anything susceptible of ownership, but is limited to that which may readily be applied to the debts of the corporation. Moreover, the term implies that that which is to be delivered to the corporation in payment for the stock must have a real and substantial value. 18A Am.Jur.2d, Corporations § 496 (1985).
In Sterling Varnish Co., supra, the Supreme Court of Mississippi held that stock can be paid for with an assignment of an exclusive marketing contract for a manufacturing process, where the transaction is in good faith and there is no fraud. Likewise, in General Bpnding & Casualty Insurance Co., supra, the Supreme Court of Texas held that contract rights transferred to a corporation in payment for stock are, to the extent of their value, “property actually received” by the corporation.
Consistent with the foregoing authority, we are of the opinion that the contracts which Lynch transferred, in exchange for the issuance of the disputed stock, were “valuable contract rights,” and as such could have constituted consideration for the payment of shares of stock. Heflin testified:
“As of the moment we incorporated, from the time we changed the — the operation changed from Mr. Lynch as a sole proprietor to the time Asset Protection Associates [Inc.] was established, there were ongoing contracts, guards in place, uniforms on them, salaries being paid, contracts being negotiated, payments being received for services provided which in that amount of time shifted from James Lynch, proprietor, to Asset Protection.”
As referred to in Heflin’s testimony, the right to continue Lynch’s ongoing negotiations for additional security contracts, as well as his labor expended in establishing, organizing, and staffing his ongoing security business, accrued to the benefit of Asset at the date of its incorporation. In Prickett v. Allen, 475 S.W.2d 308 (Tex.Civ.App.1971), the Texas Court of Civil Appeals held that labor expended by an incorpo-rator, involving assessment of the data processing market, financing travel and lodging of computer experts from out-of-state, organizing a staff of trained personnel, and designing a computer system, evaluating programs, and selecting equipment and software, the results of which were organized into a coherent package and transferred to the corporation, could constitute consideration for shares of stock issued and satisfy a constitutional requirement that “No corporation shall issue stocks or bonds except for money paid, labor done, or property actually received....”
Furthermore, in response to a question concerning the three incorporators’ valuation of the contracts, Heflin testified that “we talked in terms of maybe $100,-000-$200,000 of value plus the intangibles *347 such as goodwill and the ongoing effort that he [Lynch] was making.” Clearly, the general service contracts, as transferred by Lynch, were not mere promises to perform future personal services but, instead, were valuable contract rights, from which income was expected to and did occur without regard to the rendition of future services by Lynch. We are of the opinion that a corporation may treat as payment for stock any property which it is authorized to own and which is necessary to its business, provided that the property is taken in good faith and at a fair valuation. Therefore, we hold that the business and contracts of Lynch’s proprietorship could satisfy the applicable constitutional and statutory requirements as previously set out in this opinion.
It appears that the trial court found that the stock was issued in exchange for the business contracts of Lynch’s proprietorship. However, because the record is not clear on this point, the issue to be resolved appears to be (1) whether the stock was in fact issued in exchange for the transfer of the contracts or for $25,000 cash; and (2) if exchanged for the transfer of contracts, whether the directors or stockholders of Asset, in the absence of fraud, valued the business and contracts of Lynch’s proprietorship at $25,000 (Tit. 10, § 21(36), Code 1940). If it is determined that the contracts were properly valued at $25,000, then Lynch’s 25,000 shares should be declared fully paid and non-assessable. If the trial court should determine that the contracts were overvalued, then Lynch would owe to Asset the difference between the value Asset received and $25,000. See Mudd v. Lanier, 247 Ala. 363, 24 So.2d 550 (1945). In the event that the trial court finds, as contended by Kelly, that the stock was to be issued in exchange for $25,000 cash, then the trial court should find that this amount is owed by Lynch to Asset.
The disputed facts regarding the issuance of the 25,000 shares of the common stock of Asset must be resolved by the trial court.
REVERSED AND INSTRUCTIONS. REMANDED WITH
TORBERT, C.J. and MADDOX, ALMON and BEATTY, JJ. concur.