Jack JAMESON and Berta Jameson, Plaintiffs-Appellants and Cross-Appellees,

v.

Delbert FOSTER and Betty Foster, Defendants-Appellees and Cross-Appellants.

No. 81CA0376.

Colorado Court of Appeals, Div. III.

March 4, 1982.

Rehearing Denied March 25, 1982.

Certiorari Denied June 1, 1982.

Harshman & Deister, Thomas M. Deister, Grand Junction, for plaintiffs-appellants and cross-appellees.

Gerald B. Feather, P. C., Gerald B. Feather, Grand Junction, for defendants-appellees and cross-appellants.

KIRSHBAUM, Judge.

Plaintiffs, Jack and Berta Jameson, appeal the trial court's judgment denying their claim that certain proceeds paid to defendants, Delbert and Betty Foster, under an insurance policy should be credited against the purchase price of real property. Defendants cross-appeal the trial court's judgment granting plaintiffs specific performance. We affirm in part and reverse in part.

The record reveals the following facts. In 1978 plaintiffs leased certain real property from defendants for one year, beginning January 1, 1979. The written lease agreement contained a provision granting plaintiffs the option to purchase the property for $62,000 if the option were exercised on or before January 1, 1980. The agreement also provided that in the event plaintiffs did exercise the option, $2,500 of the rentals already paid would be applied to the purchase price. The lease agreement contained no provisions respecting insurance coverage for the rented premises.

In November of 1979, a residence on the leased property was destroyed by fire. Thereafter, defendants received the sum of $58,418 as beneficiaries of a fire insurance policy they owned on the property. None of the proceeds were used to repair the buildings. Plaintiffs owned no insurance on the property.

In early December 1979, defendants asked plaintiffs to pay the December rent. Plaintiffs did not tender the rent at that time. However, on December 28, 1979, plaintiffs mailed to defendants, via certified mail, the December rent payment together with a letter indicating their exercise of the option. Defendants received the documents on January 4, 1980. Plaintiffs' letter also requested application of the fire insurance proceeds to the purchase price of the property.

Defendants rejected plaintiffs' request regarding the insurance proceeds, returned the December rent payment to plaintiffs, and refused to convey the property to plaintiffs. Plaintiffs then filed this suit, requesting the trial court to order specific performance of the agreement and to credit the insurance proceeds received by defendants against the purchase price.

## I. SPECIFIC PERFORMANCE

Defendants contend that the trial court erred in granting specific performance because plaintiffs failed to comply with the terms of the lease agreement. Relying upon Brown v. Hoffman, Colo., 628 P.2d C17 (1981), defendants assert that by engaging in wasteful conduct and by twice making late rental payments, plaintiffs breached the agreement and rendered the option unenforceable. We disagree.

■ Preliminarily, we reject plaintiffs' contention that defendants failed to raise issues relating to specific performance in post-trial proceedings. Defendants' "Motion to Alter or Amend Judgment" and supporting "Trial Brief," considered together, adequately preserved those issues for appeal. See C.R.C.P. 59(f); · In re Estate of Lewin, 42 Colo.App. 129, 595 P.2d 1055 (1979).

In Brown v. Hoffman, supra, the lessees' option right to renew a lease was deemed dependent by implication upon the faithful performance of the covenant to pay rent. Consequently, the court concluded that the intentional and willful failure of the lessees to pay rent constituted a substantial breach of the lease, precluding the lessees from exercising the option to renew.

■ The question of whether a default is substantial involves a factual determination. Brown v. Hoffman, supra; Little Thompson Water Ass'n. v. Strawn, 171 Colo. 295, 466 P.2d 915 (1970). Here, the trial court did not find that the lessees' treatment of the property constituted a substantial breach of the agreement. It did conclude that any past conduct which could have been deemed breaches of plaintiffs' contractual obligations had been waived by defendants. The trial court also found that the late December payment did not constitute a material breach, and that the lessees had the right to exercise the option. The evidence supports the trial court's explicit

and implicit conclusions that plaintiffs did not substantially breach the agreement; hence, we will not disturb them on appeal. *Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970). Absent a substantial default in plaintiffs' performance of the covenants contained in the lease, *Brown v. Hoffman, supra,* is not controlling.

Defendants next contend that the trial court erred in granting specific performance because plaintiffs failed to exercise their option to purchase in a timely manner. We disagree.

Defendants argue that plaintiffs merely attempted to exercise the option because the certified letter containing plaintiffs' notice of such exercise was not received by defendants until January 4, 1980, three days after the deadline specified in the agreement. Defendants base their argument on the general rule that an acceptance under an option contract is not operative until received by the optionor. *See Restatement (Second) of Contracts* § 63(b); *Cities Service Oil Co. v. National Shawmut Bank,* 342 Mass. 108, 172 N.E.2d 104 (1961); *see also* Annot., 87 A.L.R.3d 805. This rule is subject, however, to the qualification that the language of an option agreement, which is controlling, may provide otherwise. *See Restatement (Second) of Contracts* § 63; *McTernan v. LeTendre,* 4 Mass.App.Ct. 502, 351 N.E.2d 566 (1976). Furthermore, when an option contract fails to prescribe any particular mode for exercising the option, no particular form of exercise is required; the optionee need only act in such manner as to indicate an unqualified manifestation of the optionee's determination to exercise the option. *Howard v. Interstate Development Co.,* 29 Colo.App. 287, 483 P.2d 1366 (1971).

The option clause at issue here states in pertinent part:

"The lessees have an option to purchase said property . . . should the option be *exercised* on or before Jan. 1, 1980." (emphasis added)

In construing this provision, we are mindful of the established legal principles that a court must enforce a contract as written; that a court is not at liberty to rewrite a contract for the parties; and that words used in a contract must be accorded their plain and accepted meaning. *Connell v. Sun Oil Co.,* 42 Colo.App. 311, 596 P.2d 1215 (1979); *Helmericks v. Hotter,* 30 Colo. App. 242, 492 P.2d 85 (1971).

The plain language of the provision in question indicates that the parties considered the exercise of the option to be the critical event in order for the option to become an enforceable contract. No requirement of notice, or delivery of notice, is suggested. Thus, the terms used by the parties here focus on the conduct of the optionees, rather than the state of knowledge of the optionors on or before the specified date. *See McTernan v. LeTendre, supra.* We conclude that the language used by the parties supports the trial court's finding that plaintiffs effectively exercised their option under the lease provisions "when the . . . letter was deposited in the mail . . . ." *See Howard v. Interstate Development Co., supra.*

Defendants also contend that the trial court erred in granting specific performance because plaintiffs failed "to come into equity with clean hands." We disagree.

The "clean hands" rule is intended to protect the integrity of the court, and simply means that equity refuses to lend its aid to a party who has been guilty of unconscionable conduct in the subject matter in litigation. *Rhine v. Terry,* 111 Colo. 506, 143 P.2d 684 (1943). Here, the evidence supports the trial court's findings that plaintiffs' conduct was not unconscionable.

## II. INSURANCE PROCEEDS

Relying on *Dolan v. Spencer,* 92 Colo. 389, 21 P.2d 411 (1933), plaintiffs contend that the trial court erred by refusing to credit the fire insurance proceeds against the exercised option's stated purchase price. We agree.

*Dolan v. Spencer, supra,* addressed the issue of the distribution of proceeds from a

policy insuring certain buildings destroyed by fire. At the time of the fire the buildings and underlying land were subject to a lease with an option to purchase. The policy holder was the lessor. As in the case at bar, the lease agreement in *Dolan* did not mention insurance coverage or proceeds regarding the leased premises. The only reference to insurance in that agreement was in the context of the lessee's covenant to refrain from acting in a manner that would invalidate insurance owned by the lessor. The court held that the lessee was entitled to the insurance proceeds, provided that he had complied with the terms of the lease agreement and had elected to exercise the option to purchase.

 Defendants argue that *Dolan* is inapposite because at the time of the fire the plaintiffs here, unlike the optionee in *Dolan*, had not yet exercised their option and, were therefore, mere lessees with no equitable interest in the leased property. However, the optionee in *Dolan* "had more than two and one-half years in which to exercise his option." *Dolan v. Spencer, supra.* The plaintiffs here had approximately six weeks after the fire within which to exercise their option, and a portion of the rental payments they had made prior to the fire was to be applied to the purchase price in the event they exercised the option. In these circumstances, they did have an equitable interest in the property prior to the fire. *See Nelson Properties, Inc. v. Denham*, 123 Fla. 382, 167 So. 35 (1936); *see generally Gard v. Razanskas*, 248 Iowa 1333, 85 N.W.2d 612 (1957).

We perceive no material basis upon which to distinguish *Dolan v. Spencer, supra*, from this case and we conclude that the trial court erred in denying plaintiffs credit for the insurance proceeds defendants collected. This result permits both parties to receive the equivalent of their original bargain. A contrary result would bestow a windfall benefit upon the lessor while unfairly penalizing the lessee. However, defendants are entitled to reimbursement from plaintiffs for any premium payments on the policy here at issue which defendants made during 1979. *Berlier v. George*, 94 N.M. 134, 607 P.2d 1152 (1980). Although the issue of credit for premium payments was not addressed in *Dolan v. Spencer, supra*, we conclude that defendants should not be penalized for insuring the premises.

The judgment granting plaintiffs specific performance of the option to purchase is affirmed. The judgment denying plaintiffs' claim for credit for the insurance proceeds is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views set forth herein.

STERNBERG and TURSI, JJ., concur.