**In re Alfred Thielen WHATLEY, Debtor.**

**WHATLEY RANCH JOINT VENTURE, LTD., Appellant,**

v.

**Alfred Thielen WHATLEY, Appellee.**

**Civ. A. No. 93–B–1246.**

United States District Court,
D. Colorado.

July 5, 1994.

Craig D. Joyce, Anne Baudino Holton, Walters & Joyce, P.C., Denver, CO, for appellant.

Matthew D. Skeen, Skeen & Pearlman, Denver, CO, for appellee.

David M. Rich, Clanahan, Tanner, Downing & Knowlton, P.C., Denver, CO, for amicus curiae Summit Ranch LLC.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Appellant Whatley Ranch Joint Venture, Ltd. (WRJV) appeals from three orders of the United States Bankruptcy Court for the District of Colorado entered on June 4, 1993: (1) approving sale of the Whatley Ranch (the Ranch) free and clear of liens and interests pursuant to 11 U.S.C. § 363 (the sale order), (2) disallowing WRJV's claim, and (3) confirming the debtor Alfred Thielen Whatley's (Whatley) amended reorganization plan. To grant WRJV's requested relief requires the setting aside the sale of the Ranch to Summit Ranch Limited Liability Company (Summit Ranch), a good faith purchaser, and the disgorgement of the funds received by Whatley's bankruptcy creditors under Whatley's amended reorganization plan. Whatley moves to dismiss the appeal for mootness. For the reasons set forth below, Whatley's motion will be granted. Alternatively, even if this appeal were not moot, I would affirm the orders.

## I.

Whatley filed a voluntary chapter 11 petition in June, 1992. The primary asset of the bankruptcy estate was the Ranch. WRJV filed a claim against the estate, asserting that it held an interest in the Ranch under a 1985 option contract (the agreement) between Whatley and Winthrop C. Lockwood, Jr. (Lockwood). Lockwood later assigned his interest to WRJV. The agreement was amended on September 19, 1987 and April 1, 1989. The agreement, as amended, constitutes the entire agreement between the parties. The bankruptcy court found that Whatley terminated the agreement in the fall of 1990.

After filing his bankruptcy petition, Whatley contracted to sell the Ranch to Summit Ranch. Whatley then filed a motion to sell the Ranch free and clear of liens and interests and confirm his chapter 11 plan. Whatley notified interested parties, including WRJV, of these motions pursuant to Rule 23 of the local rules of bankruptcy procedure. In early January, 1993, WRJV filed an objection to Whatley's motions and requested a hearing.

The bankruptcy court entered an order holding the motion to sell in abeyance until the hearing on confirmation of Whatley's reorganization plan. Next, Whatley filed an amended plan of reorganization and a disclosure statement. In the disclosure statement, he expressly stated that the only contingency contained in the Summit Ranch contract was the ability of the estate to obtain the bankruptcy court's approval to sell the property free and clear of encumbrances and interests pursuant to § 363(f) of the bankruptcy code. *See* Disclosure Statement dated February 25, 1993, p. 8.

The hearing on Whatley's motions was held June 4, 1993. Since the bankruptcy court's determination as to the validity of WRJV's claim against Whatley's estate impacted Whatley's motion to sell the Ranch and to confirm the plan, the court first addressed Whatley's objections to WRJV's claim. The court held that WRJV's contractual interest in the Ranch terminated in the fall of 1990 when notice of termination was given and, thus, WRJV had no basis for asserting its claim against the bankruptcy estate. Consequently, WRJV's claim was disallowed in full. With WRJV's claim eliminated, the court approved the sale of the Ranch to Summit Ranch and confirmed Whatley's amended reorganization plan.

The court invited Whatley's counsel to prepare an order authorizing the Ranch sale. *See* Transcript of June 4, 1993 hearing, p. 24. That afternoon, Whatley's counsel filed the proposed sale order along with a separate order confirming the amended reorganization plan. The sale order, signed on June 4, 1993,

explicitly states that the sale of Ranch is approved pursuant to 11 U.S.C. § 363.

WRJV states that it received a copy of the sale order on Monday, June 7, 1993. The sale closed at 10:00 a.m. on June 8, 1993. WRJV filed this appeal and its motion for stay in the bankruptcy court on June 9, 1993. The bankruptcy court denied the motion to stay on July 1, 1993. The next day, WRJV filed a motion to stay in this court. I denied that motion as well as its subsequent motion for reconsideration. Finally, WRJV filed an emergency motion to enjoin on an interim basis the sale of the Ranch by Summit Ranch. That motion was also denied.

The mootness issue was first brought to my attention in WRJV's motion to strike issue no. 1 of Whatley's counterstatement of the issues or, in the alternative, motion to treat issue no. 1 as a motion to dismiss. In Whatley's response to the motion to strike, he stated that his reorganization was substantially consummated, the sale of his primary asset had occurred, and the proceeds of the Ranch sale were distributed to his creditors pursuant to the amended plan's terms. *See* Whatley's response, pp. 1–2; *See also In re Whatley*, 155 B.R. 775, 782 (Bankr.D.Colo. 1993) ("[Whatley's] plan of reorganization has now been substantially consummated"). In reply, WRJV requested leave to conduct limited discovery to determine whether funds remain in the estate to satisfy as least a portion of its claim should it prevail on appeal. *See* WRJV reply, ¶¶ 4–5.

In my April 15, 1993 order, I held that the mootness issue would be treated as a motion to dismiss. However, I granted WRJV leave to conduct the limited discovery which it contended was necessary to resolve the mootness question. Notwithstanding this order, the only evidence submitted pursuant to this additional discovery was deposition excerpts of Matthew D. Skeen, Whatley's attorney, Kevin Smith, Summit Ranch's manager, and Whatley. The testimony concerns primarily the manner in which the sale was conducted and the drafting of the proposed § 363 order. WRJV offers no evidence to refute the contention that Whatley's plan of reorganization has now been substantially consummated and the funds from the Ranch

sale dispersed or that any funds remain in the estate to satisfy a portion of its claim should it prevail on appeal.

## II.

The threshold question here is whether WRJV's appeal is moot. Whatley contends that the failure of WRJV to obtain a stay of the sale ordered pursuant to § 363(m) of the bankruptcy code renders the appeal moot. WRJV does not dispute that a sale of property ordered pursuant to § 363(m) not stayed before the sale occurs cannot be reversed on appeal. However, WRJV argues that the sale order here was not entered pursuant to § 363, but pursuant to and in furtherance of the reorganization plan. Thus, as the argument goes, Bankr.Rule 7062's exception for a § 363 sale does not apply and, therefore, the Ranch's sale is invalid. The record does not support WRJV's argument.

Bankruptcy Rule 7062 incorporates the provisions of Fed.R.Civ.P. 62. That rule provides, in pertinent part:

> Except as stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry.

Fed.R.Civ.P. 62. Bankruptcy Rule 7062 excepts from the ten day stay of execution orders entered pursuant to § 363.

Under § 363, an appeal of a bankruptcy court's order for sale of property cannot affect the rights of a good faith purchaser of the property, unless the appellant obtains a stay of the sale pending appeal. *See* 11 U.S.C. 363(m). A stay serves to maintain the status quo pending appeal, thereby preserving the ability of the reviewing court to offer a remedy and holding at bay the reliance interests in the judgment that otherwise militate against reversal of the sale. *In re CGI Industries, Incorporated f/k/a Creative Glassworks International, Incorporated,* 27 F.3d 296, 299–300 (7th Cir.1994). In order to protect the public's interest in finalizing bankruptcy sales to encourage buyers to purchase the debtor's property, to prevent injury to creditors, and to insure that adequate sources of financing remain available,

§ 363(m) protects the validity of certain sales by the trustee from the potential consequences of an appeal, if the order authorizing the sale is not stayed. *In re Osborn*, 24 F.3d 1199, 1203 (10th Cir.1994). By removing those remedies that would affect the validity of a sale to a good faith purchaser, § 363(m) moots some appeals, namely, those in cases where the only remedies available are those that affect the validity of the sale. *Id.* However, where state law or the Bankruptcy Code provides remedies that do not affect the validity of the sale, § 363(m) does not moot the appeal. *Id.*

There are two complimentary policies at work in § 363 and bankruptcy code cases. *In re Stadium Management Corp.*, 895 F.2d 845, 847 (1st Cir.1990). The first emphasizes the importance of encouraging finality in bankruptcy sales by protecting good faith purchasers and thereby increasing the value of sale assets. *Id.; In re Osborn*, 24 F.3d at 1203. In this case, WRJV does not dispute that Summit Ranch was a good faith purchaser. The second policy is broader and stresses a court's general jurisdictional bar from deciding cases in which it cannot provide a remedy. *In re Stadium Management Corp.*, 895 F.2d at 847; *see e.g., Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895) (discussing generally the dismissal of appeals for mootness). In this respect, it is speculative at best that Whatley's estate creditors could be effectively or equitably ordered to disgorge funds distributed to them a year ago.

Notably, WRJV does not suggest that the bankruptcy court could not, as a matter of law, order the Ranch sale pursuant to § 363. *See In re Broadmoor Place Investments, L.P.*, 994 F.2d 744 (10th Cir.1993). Instead, its contention is that the bankruptcy court did not intend to order the sale pursuant to § 363 notwithstanding explicit reference to § 363. WRJV asserts this argument on appeal without having raised it in the bankruptcy court in a motion to amend under Bankr. Rule 9023 or 9024. Instead, WRJV raised this argument for the first time in the bankruptcy court hearing addressing its motion for stay.

The bankruptcy court denied the motion for stay and, for purposes of the motion only, assumed that the order authorizing the sale was not entered pursuant to § 363. *In re Whatley*, 155 B.R. at 779. Under this assumption, the court ruled against WRJV on the ground that its orders disallowing WRJV's claim, authorizing sale of the estate property, and confirming the reorganization plan were all self-executing orders which became effective and binding immediately upon entry. *Id.* at 781. As a result, the court held that Rule 7062, staying execution of judgments for ten days, was not applicable. *Id.*

In response to WRJV's argument that the sale order was not entered pursuant to § 363, the bankruptcy court stated that it "does not necessarily agree that the sale order was not an order entered pursuant to section 363 of the Code." While noting some confusion, the bankruptcy court recognized that the disclosure statement makes explicit reference to the motion as one to sell pursuant to § 363(f) and the order authorizing the sale is itself premised on § 363. *Id.*

I conclude that the bankruptcy court intended that the sale order enter pursuant to § 363. WRJV's failure to obtain a stay of the sale order is fatal under § 363. The Ranch sale is irreversible on appeal and disgorgment ineffective and inequitable. Consequently, WRJV's appeal is moot in its entirety because no effective relief is available. *See* WRJV's motion for leave to file interlocutory appeal, p. 8 n. 6. (The proceeds from the sale of the Ranch is the only basis for funding the reorganization plan).

I am mindful of the Tenth Circuit's recent decision addressing the mootness question in a § 363 context. *See In re Osborn*, 24 F.3d 1199 (10th Cir.1994). In *Osborn*, the court held that the Osborns' appeal was not moot because it is possible for the court to grant some measure of effective relief. As equitable relief, the Osborns suggested that under Texas law they would be entitled to recover the value of their homestead from the sale proceeds. *In re Osborn*, 24 F.3d at 1202.

*Osborn* is distinguishable. First, WRJV fails to suggest any effective relief under Colorado law or otherwise. In fact, it has

admitted that its failure to obtain a stay of the bankruptcy court's orders renders its appeal moot because it would be left without any remedy. *See* motion for stay pending appeal, p. 1, dated June 9, 1993 and filed in bankruptcy court, motion for stay pending appeal, p. 3, dated July 2, 1993 and filed in this court, motion for interlocutory appeal, p. 8. Second, in *Osborn,* the bank argued that the appeal was moot because the sale proceeds had been commingled. Here, the sale proceeds have been dispersed, not commingled, and the reorganization substantially consummated. While recognizing that § 363(m) does not necessarily moot all appeals, I conclude that this appeal is moot under the circumstances here. At this juncture I can discern no possible way to fashion any effective relief even if WRJV were to prevail on appeal.

My conclusion is further supported by the fact that WRJV had the power and ability to seek immediately a stay of the bankruptcy court's orders pursuant to Bankr.Rule 8005, yet failed to do so. WRJV was present in the courtroom on June 4, 1993 when the bankruptcy court announced its rulings. Bankruptcy Rule 8005 provides in pertinent part:

> ... [T]he bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

Furthermore, the Ranch sale was not conducted in the dead of night, fast on the heels of the bankruptcy court's rulings. It was conducted at 10:00 a.m., four days after the court entered its sale order. WRJV had ample opportunity to seek a stay before the sale was consummated.

In its appellate reply, WRJV argues that the sale is invalid because no § 363 notice was given. WRJV did not raise this argument before the bankruptcy court and, therefore, it cannot be considered on appeal. *In re Robinson,* 987 F.2d 665, 669 (10th Cir. 1993). However, even if this argument had been raised, it is without merit. On January 3, 1993, WRJV filed an objection to What-

ley's motion to sell property free and clear of all liens and confirm the chapter 11 plan. Certainly, it must have had adequate notice to file this objection.

### III.

Even if WRJV's appeal were not moot, there is no reversible error. The threshold question here is whether WRJV had a valid claim against Whatley's estate by virtue of the agreement.

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify or remand the bankruptcy court's ruling. Bankr.R. 8013. District courts review factual findings under the clearly erroneous standard while conclusions of law are reviewed *de novo. Bartmann v. Maverick Tube Corp.,* 853 F.2d 1540, 1543 (10th Cir. 1988). A factual finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.*

The agreement covers three parcels which collectively constitute the Ranch. WRJV argues that the bankruptcy court erred in finding and concluding that Whatley properly terminated the contract after WRJV failed to exercise its option on parcel "B" on or before October 1, 1990. WRJV argues Whatley prematurely terminated the agreement. WRJV maintains that the termination date is ambiguous because section 7.2 required WRJV to purchase parcel "B" by October 1, 1990, yet allows payments to be made for this property through April 1992. I disagree.

The interpretation of a written contract and the determination whether a provision in a contract is ambiguous are issues of law which I review de novo on appeal. *Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371, 374 (Colo.1990). In determining whether a provision is ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used, and reference must be made to all of the agreement's provisions. *Id.* A provision is ambiguous if it is fairly susceptible to more than one interpre-

tation. *Id.* If a contract is not ambiguous, extrinsic evidence is inadmissible to prove the parties' intent, and the parties' intent must be determined from the terms of the contract. *Id.*

The contract defines the term of the agreement as:

[T]he period commencing with the agreement closing date [October 1, 1985] and terminating on the eighth anniversary of the agreement closing date unless sooner terminated pursuant to the terms and conditions of this Agreement. Except as otherwise provided herein, upon the expiration of the term of the agreement or sooner termination hereof, the provisions of this agreement which require or anticipate performance by a party after the expiration or earlier termination of this agreement or if such performance or continued performance is required to affect the intent and purpose of such a provision, such provisions and the obligations of the parties shall remain in full force and effect and be binding upon the parties.

*See* Agreement, § 2.51. The first amendment extended the termination date to the tenth anniversary of the closing date, October 1, 1995. Sections 7.1, 7.2, and 7.3 of the contract set forth the dates by which WRJV could purchase the three parcels. The bracketed dates indicate extensions made by the first amendment.

Section 7.1. **Purchase of A Property.** Purchaser shall have the right to acquire the Golf Course Property at any time during the Term of the Agreement subject to the provisions of Article XV and in accordance with the Closing Requirements set forth in Article XXV hereof. If Purchaser acquires the Golf Course Property prior to the third [fifth] anniversary of the Agreement Closing Date, the Golf Course Property purchase price shall be $250,000.00 payable in cash (the "Accelerated Golf Course Purchase Price"). Purchaser shall receive a credit against the Accelerated Golf Course Purchase Price for all Option Payments (except the first Option Payment) made prior to the purchase of the Golf Course Property. Thereafter, the remaining portion of the A property shall be

conveyed pursuant to Section 6.1 above without additional consideration. If Purchaser acquires the Golf Course Property on or after the third [fifth] anniversary of the Agreement Closing Date, Purchaser shall not be obligated to pay any additional consideration thereof or for any portions thereof so long as Purchaser has paid to Seller the B Property Purchase Price and so long as Purchaser is in compliance with the Golf Course Construction Assurances.

Section 7.2. **B Property.** Purchaser shall purchase the B Property, if at all, on or before the third [fifth] anniversary of the Agreement Closing Date. The purchase price of the B Property shall be $532,-000.00 payable in Cash and inclusive of all Option Payments, except the first Option Payment, made prior to the purchase of the B Property and inclusive of the Accelerated A Property Purchase Price if Purchaser has previously purchased the A Property (the "B" Property Purchase Price).

Section 7.3. **Development Land.** At any time during the Term of the Agreement after the purchase of the B Property, Purchaser shall have the right to purchase the Development Land in whole or in part subject to the terms and conditions of this Agreement.

The contract, as amended, provides for option payments to continue through April 1992. The option payments are credited towards payment of the purchase price for parcels "A" and "B".

■ WRJV argues that the extension of the option payment schedule until April 1992 also extends the date to exercise its option to purchase parcel "B". To the contrary, although the option payments may be applied to the purchase price of parcel "B", the extension of the option payment schedule does not extend also the date for purchasing parcel "B". Section 7.2 is clear and unambiguous. It expressly states that parcel "B" shall be purchased by the fifth anniversary of the agreement closing date. This clear language leaves no room for doubt that parcel "B" must be purchased by the fifth anniversary. In contrast with sections 7.1 and 7.3, there is

no provision for acquisition of parcel "B" after the fifth anniversary.

Furthermore, WRJV's theory that extension of the option payment schedule extends the option purchase date on parcel "B" is tenuous at best. To accept this theory requires one to assume that the unambiguous, absolute language of section 7.2 was impliedly changed by amendment of the option payment schedule. The clear language of section 7.2 cannot be displaced by mere implication. Therefore, the bankruptcy court ruled correctly that the option to purchase parcel "B" did not extend beyond the fifth anniversary.

The bankruptcy court did not err in concluding that Whatley terminated the agreement in November 1990. Section 7.1 permits WRJV to purchase parcel "A" any time during the term of the contract, which according to section 2.51, extends through October 1, 1995. However, section 2.51 states that the term of the contract begins on October 1, 1985 and terminates on its tenth anniversary *"unless sooner terminated pursuant to the terms and conditions of this Agreement"*. (Emphasis added). The term of the contract ended when Whatley terminated the contract in accordance with its terms and conditions. Because the term of the contract ended when Whatley terminated it on November 16, 1990, WRJV also lost its ability to purchase parcel "A" at that time.

WRJV relies on *Jameson v. Foster*, 646 P.2d 955 (Colo.App.1982) for the proposition that it has an equitable interest in its option payments made to Whatley. WRJV's reliance on *Jameson* is misplaced because the facts in this case are distinguishable. In *Jameson*, unlike here, the party asserting the equitable interest had exercised the option. WRJV never attempted to exercise the option before termination. Furthermore, if it had, the agreement itself provides that the option payments would have been applied to the purchase price. *See* §§ 7.1 and 7.2.

WRJV further argues that Whatley's numerous material breaches under the contract preclude him from avoiding the contract. The bankruptcy court found that these breaches were immaterial. The court further found and concluded that the alleged defaults were not material because WRJV was not ready to tender performance to buy the property. The bankruptcy court's findings and conclusions are supported by the record and are not contrary to law. Since there is no evidence that WRJV was prepared to exercise its option to purchase any of these parcels before termination, any alleged breach of Whatley's is excused. *O'Hara Group Denver, Ltd. v. Marcor Housing Systems, Inc.*, 197 Colo. 530, 595 P.2d 679, 684–85 (1979). Moreover, there is no evidence that Whatley could not have cured these alleged breaches had WRJV attempted to exercise its option. *Id.*

Since WRJV had no further interest in the Ranch after November, 1990, the bankruptcy court did not err in denying WRJV's claim against Whatley's bankruptcy estate. Once the court determined that WRJV had no valid claim, it correctly concluded that WRJV could not challenge the confirmation of Whatley's amended reorganization plan or the Ranch sale.

ACCORDINGLY, IT IS ORDERED that WRJV's appeal is dismissed as moot. Alternatively, the orders of the bankruptcy court are affirmed.