**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 3, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PARISH CHEMICAL COMPANY;
UINTAH PHARMACEUTICAL,

    Defendants.

------------------------------

BRET F. RANDALL,

    Trustee - Appellee,

and

RW INVESTMENTS,

    Objector - Appellant.

No. 17-4192
(D.C. No. 2:09-CV-00804-CW)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **McKAY** and **BALDOCK**, Circuit Judges.
_____

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

R.W. Investments (RWI) owns land adjacent to a formerly contaminated property (Property) that was cleaned up by the U.S. Environmental Protection Agency (EPA) pursuant to its authority under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601-9675. Under this statute, the cost of this cleanup constituted a lien in the United States' favor on the Property. *See id.* § 9607(*l*). EPA recorded notice of the CERCLA lien in the appropriate county office, and more than two years later RWI purchased and recorded an easement on the Property. RWI appeals the district court's order approving the sale of the Property free and clear of all encumbrances and assigning RWI's easement interest in the sale proceeds to a position junior to the CERCLA lien. The Appellees, in turn, move to dismiss the appeal as moot, based on the sale of the Property after we and the district court denied RWI's motions to stay its sale pending appeal. We grant the Appellees' motion in part and deny it in part and otherwise affirm the district court's decision.

## BACKGROUND

The Property is an approximately two-acre site in Vineyard, Utah that was formerly owned and operated by the Parish Chemical Company and an affiliated company (collectively "Parish"). Parish contaminated the Property with thousands of gallons of hazardous substances during its operations there, leading EPA to spend more than $2.5 million in federal funds to clean up the site. EPA began response activities at the Property in 2008 and completed them in 2016.

2

**A. The CERCLA Lien**

CERCLA holds owners and operators of contaminated properties liable for the cost of responding to the release or threatened release of hazardous substances and authorizes the United States and other persons to bring suit to recover these costs. *See* 42 U.S.C. § 9607(a); *Colorado v. Idarado Mining Co.*, 916 F.2d 1486, 1488-89 (10th Cir. 1990). To assist the United States in recovering its costs, CERCLA also imposes a lien in favor of the United States for all federally funded response costs on properties owned by liable parties. 42 U.S.C. § 9607(*l*)(1). A CERCLA lien is subject to the rights of "any purchaser, holder of a security interest, or judgment lien creditor whose interest is perfected under applicable State law *before* notice of the [CERCLA] lien has been filed in the appropriate office." *Id.* § 9607(*l*)(3) (emphasis added).

Pursuant to this authority, EPA, acting on behalf of the United States, recorded a "Notice of Federal Lien" (Notice) on the Property in March 2009 for the response costs it was incurring there. The Notice described the Property in detail, correctly identified the Property's owner, described the nature of the lien, and provided the date of filing and contact information for the EPA office responsible for the lien. The Notice also included a certificate of mailing certifying that EPA was simultaneously sending a copy of the Notice by certified mail to Parish and its attorney. EPA prominently noted the certified mail article number for this certified mailing in the letter to Parish and its attorney that accompanied the copy of the Notice sent to them. On or about the time it recorded the Notice, EPA also made the

3

documents relating to the CERCLA lien and Notice available to the public in a Lien Filing Record.

## B. RWI's Interest

RWI owns land adjacent to the Property, which it leases to a drywall business. In 2011, the Utah Department of Transportation (UDOT) condemned a strip of property that included portions of both the Property and RWI's land for a road-widening project. RWI had used part of its condemned land as a parking area. UDOT compensated RWI $725,000 for its condemned property, including nearly $289,000 for the lost parking and more than $267,000 in additional compensation for RWI to raze a building on its remaining property to replace the lost parking. UDOT also paid RWI $75,000 to enable it to move to another location. But instead of moving or constructing new parking on its own land using these funds, RWI opted to address its parking shortage by paying Parish $50,000 for an option to purchase or acquire a perpetual parking easement on a half-acre of the Property. RWI exercised the easement option and recorded the option and easement with the appropriate county office in October 2011, more than two-and-a-half years after the United States recorded the CERCLA lien on the Property. It is undisputed that the CERCLA lien appeared in the chain of title for the Property at this time.

## C. EPA's Settlement with Parish

In 2009, several months after it recorded the Notice, the United States filed suit against Parish, as the Property owner and operator, to recover its past and future costs for cleaning up the Property and for other relief. In late 2012 the United States

and a receiver acting on behalf of Parish agreed to settle the United States' CERCLA claims against the company through a proposed Consent Decree and Stipulated Judgment. Among other things, the proposed Consent Decree stipulated to entry of judgment against Parish for the more than $900,000 in response costs EPA had incurred at the Property to date.

Because Parish was unable to pay for these and anticipated future response costs at the site, the Consent Decree provided that Parish would satisfy this obligation by conveying the Property to a trust that would hold the land for the benefit of the United States. The Trust Agreement attached to the Consent Decree provided that the Property could be sold for the United States' benefit, and designated Bret F. Randall as trustee [hereinafter "Trustee"] to manage the trust and any subsequent sale. The Consent Decree and its attachments further identified RWI's purported easement interest in the Property as subordinated to the United States' earlier recorded CERCLA lien and provided for EPA to receive the proceeds of the Property's sale, after payment of fees and expenses, until the obligations to it were satisfied. *See* Aplt. App. Vol. 1 at 120, 123, 157. Although RWI had been engaged in the case shortly before this settlement was reached,[1] it did not object to the proposed Consent Decree and attachments when they were made available for public comment or

---

[1] A few months before the proposed settlement documents were lodged with the court and made available for public comment, RWI moved to intervene in this case to raise claims related to UDOT's condemnation of part of the Property. RWI withdrew its intervention motion in October 2012, before the district court could address it.

5

otherwise seek to participate in the court's consideration of the proposed settlement. In March 2013, following a 30-day public comment period and a hearing, the district court approved and entered the Consent Decree and Stipulated Judgment.

**D. The Property's Sale**

After EPA completed cleanup of the Property late in 2016, the Trustee, acting under the Consent Decree, moved for an order approving proposed bidding and auction procedures for sale of the Property free and clear of all liens and encumbrances, with any such interests transferring to the proceeds of the Property's sale ("Sale Motion"). The only interest recorded on the Property besides the United States' CERCLA lien was RWI's easement. At the Trustee's request, the district court ordered that the Sale Motion be served on RWI to satisfy due process requirements.

RWI responded by filing written objections to the Sale Motion in which it argued that its easement interest was senior to the CERCLA lien and that the district court lacked authority to approve sale of the Property as proposed. The district court held a hearing on the Trustee's motion and RWI's objections at which RWI, the United States and the Trustee appeared. After the hearing, at the district court's invitation, all three submitted supplemental briefing on, among other things, the court's equitable authority to order a sale free and clear of all encumbrances, with these interests to attach to the sale proceeds in order of priority.

In October 2017, the district court granted the Trustee's Sale Motion. In its order (Sale Order), the court found that the United States was the senior interest holder on the

6

Property and that RWI was on at least constructive notice of that interest at the time it acquired the option and easement.[2] The district court further held it had equitable authority to order the sale free and clear of any encumbrances and to transfer all interests in the Property to the proceeds of the sale in the order of their priority, that equitable considerations justified the Property's sale as proposed by the Trustee, and that RWI had received sufficient due process with respect to the Property's sale.

RWI appealed the Sale Order and sought a stay pending appeal in the district court. It also filed a lis pendens notifying the public of its pending appeal. The district court denied RWI's motion and ordered it to release the lis pendens after receiving written argument and holding a hearing. RWI then filed a motion in this court to stay the Property's sale pending appeal, which we denied. The Property, free of all encumbrances, was sold at auction to an unrelated third-party in January 2018, and the sale closed in May 2018. The Trustee distributed the sale proceeds shortly thereafter as required by the Consent Decree and Trust Agreement and authorized by the district court's Sale Order. Because the sale proceeds were less than the amount of the United States' senior CERCLA lien, RWI did not receive proceeds from the sale.

---

[2] The district court also noted that the record "strongly suggest[ed]" that RWI had actual notice of the CERCLA lien as well. Aplt. App. Vol. 2 at 542 n.4.

## DISCUSSION

### A. Motion to Dismiss Appeal as Moot

The Trustee, joined by the United States, moves to dismiss this appeal as constitutionally moot or, in the alternative, under the equitable mootness doctrine. Constitutional mootness is a threshold question we must address "because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow v. BLM*, 601 F.3d 1096, 1109 (10th Cir. 2010) (internal quotation marks omitted). "An appeal is constitutionally moot if the court can fashion no meaningful relief. At the same time, if a court can fashion some form of meaningful relief, even if it only partially redresses the grievances of the prevailing party, the appeal is not moot." *Search Mkt. Direct, Inc. v. Jubber (In re Paige)*, 584 F.3d 1327, 1336 (10th Cir. 2009) (internal quotation marks, brackets and ellipses omitted). The equitable mootness doctrine, in turn, is not jurisdictional but we have held that it "allows a court to decline to hear a bankruptcy appeal, even when relief could be granted, if implementing the relief would be inequitable." *C.O.P. Coal Dev. Co. v. C.W. Mining Co. (In re C.W. Mining Co.)*, 641 F.3d 1235, 1239-40 (10th Cir. 2011). In either case, the party asserting mootness bears the burden of showing that dismissal is warranted. *See Paige*, 584 F.3d at 1336, 1339-40.

Consistent with these principles, we consider whether this appeal is constitutionally moot by looking to whether meaningful relief is available if RWI prevails on either or both of the two issues it raises on appeal. Those issues are:

8

(1) whether the district court exceeded its authority in ordering the sale of the Property free and clear of RWI's easement and any other encumbrances while remitting these interests to the proceeds of the sale in order of their priority;[3] and (2) whether the district court erred in finding that RWI's easement interest in the Property was junior in priority to the CERCLA lien. We conclude that the first of these issues is constitutionally moot, but the second is not.

RWI's contention that the district court erred in extinguishing its easement on the Property and transferring that interest to the sale proceeds is constitutionally moot because it challenges the sale of the Property under the terms ordered by the district court. It is well-established that courts lack the power to undo a court-approved sale of a property to a good-faith purchaser. *See, e.g., Tompkins v. Frey (In re Bel Air Assocs., Ltd.)*, 706 F.2d 301, 304-05 & n.10 (10th Cir. 1983) (stating a property's sale to a good faith purchaser "remov[es] the property from the jurisdiction of the courts and render[s] moot the appeal from the order authorizing the sale"); *C.W. Mining Co.*, 641 F.3d at 1239 (same). As the Supreme Court stated long ago, "[s]trong as a plaintiff's equity may be, it can in no case be stronger than that of a purchaser, who has put himself in peril by purchasing a title, and paying a valuable consideration, without

---

[3] As part of this argument, RWI contends the district court violated its due process rights because its interest in the Property could only be extinguished through judicial foreclosure. It also complains that its due process rights were violated because it "was not allowed to participate in" the determination of EPA's response costs in the Consent Decree, Aplt. Opening Br. at 29, even though it had an opportunity to participate in the public comment period on the proposed Consent Decree but did not do so.

notice of any defect in it." *Boone v. Chiles*, 35 U.S. 177, 210 (1836). Thus, "[w]here there is no stay [of the property's sale pending appeal], an appellant loses all actionable rights to the property that has been lawfully conveyed to a third party. And any cloud his prior rights created on the property's title is thereby extinguished."[4] *2DP Blanding, LLC v. Palmer*, 423 P.3d 1247, 1252 (Utah 2017); *see also United States v. Fitzgerald*, 109 F.3d 1339, 1342 (8th Cir. 1997) (holding appellant's argument that property should have been sold subject to his senior interest was moot because "the property is now in the hands of good faith purchasers who relied upon the sale, and we cannot undo that purchase").[5]

---

[4] An appellant's request for a stay of the property's sale pending appeal does not prevent its claims from becoming moot if the request is denied. *See In re Nat'l Mass Media Telecomm. Sys., Inc.*, 152 F.3d 1178, 1180-81 (9th Cir. 1998) ("Because constitutional mootness focuses only on the inability of the court to grant effective relief, the conduct of the parties is irrelevant in determining whether a claim is moot."). But RWI does not lose out on appellate review entirely. This court considered the merits of the claim when RWI filed an emergency motion for a stay pending appeal. In this motion RWI clearly demonstrated irreparable harm, explaining that this court would lose jurisdiction to review the merits when the property sold. Notwithstanding the strength of RWI's irreparable-harm argument, the court denied the motion because RWI simply could not show a likelihood of success on the merits.

[5] Although many of the cases stating this rule are grounded in former Bankruptcy Rule 805 or section 363(m) of the Bankruptcy Code, 11 U.S.C. § 363(m), *see e.g.*, *Bel Air*, 706 F.2d at 304-05 & n.10; *C.W. Mining Co.*, 641 F.3d at 1239, the rule has also been recognized and applied outside of the bankruptcy context, *see Fitzgerald*, 109 F.3d at 1342 (finding appeal of foreclosure sale was moot because property had been sold to a good faith purchaser); *see also* Restatement (First) of Restitution § 74 cmt. i (Am. Law Inst. 1937) ("A person, other than the judgment creditor or his attorney, who purchases at a valid execution sale upon a judgment which is not void but which is subsequently reversed is entitled to retain the subject matter if, before reversal, he has obtained the legal title and has paid value therefor."). The general application of this rule is also

RWI does not dispute that the Property was sold to a good-faith purchaser or that the sale cannot be undone. Instead it argues that this appeal is not moot because the district court can grant it relief from the "improper distribution" of the sale proceeds "to an inferior interest holder" by "order[ing] the U.S. to return the proceeds it improperly received." RWI's Resp. to Trustee's Mot. to Dismiss at 6, 8, 21. But this is not a challenge to the district court's determination that it had authority to extinguish all encumbrances on the Property and transfer them to the sale proceeds, but rather a challenge to the district court's separate determination of the relative priorities of RWI's and the United States' interests in the Property and, upon its sale, to the sale proceeds. Because we cannot undo the sale of the Property without encumbrances as authorized by the district court, RWI's appeal of this aspect of the Sale Order is constitutionally moot. We therefore lack jurisdiction to consider this issue and dismiss it from this appeal.[6]

consistent with our recognition that we "may lack jurisdiction over an appeal where the impact of reversal would fall most heavily on parties not before the court." *Paige*, 584 F.3d at 1343; *see Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 841 F.2d 92, 96 (10th Cir. 1988) ("We are without jurisdiction to impose substantial adverse consequences upon" persons absent from the proceedings).

[6] RWI apparently seeks to avoid this result by characterizing the relief it seeks on this issue as "revers[al of] the district court's finding that it had equitable authority to adjudicate the priority of RWI's interest in this case." Aplt. Opening Br. at 37. But RWI's argument on this issue belies this characterization, as it asserts throughout that "the district court erred in extinguishing RWI's [easement] interest" in the Property when it approved the sale of the Property without encumbrances, Aplt's Reply Br. at 16; *see id.* at 16-23; Aplt's Opening Br. at 11-12, 28-37, and seeks to have this decision reversed, Aplt's Opening Br. at 37 (concluding district court's order "to extinguish RWI's easement and option interests and to transfer those interests to the [sale] proceeds . . . was in error . . . and should be reversed"). These arguments therefore challenge the district court's authority to approve the

11

RWI's challenge to the district court's decision on the priority of its interest is subject to a different analysis. With respect to this claim, the United States argues that no relief is available, so that this issue is also constitutionally moot, because all of the proceeds from the Property's sale have been distributed by the Trustee. But the proceeds available after payment of fees and expenses were disbursed to a single entity, the United States, which is a party to this action. As a result, the party receiving the available sale proceeds is within the district court's jurisdiction and had notice of RWI's claim that its easement interest had priority over the United States' interest in these proceeds. These circumstances distinguish this case from those relied upon by the United States, which concerned circumstances in which sale proceeds had been disbursed to innocent third-parties who had no reason to doubt the finality of the transaction. *See, e.g.*, *Whatley Ranch Joint Venture, Ltd. v. Whatley (In re Whatley)*, 169 B.R. 698, 699, 700-01 (D. Colo. 1994) (holding challenge to property sale was moot because the property had been sold to a good faith purchaser and the sale proceeds distributed to the debtor's bankruptcy creditors and "it is speculative at best that [the] estate creditors could be effectively or equitably ordered to disgorge funds distributed to them a year ago"), *aff'd*, 54 F.3d 788 (10th Cir. 1995) (unpublished); *see also In re Simon Transp. Servs., Inc.*, 138 F. App'x 52, 56 (10th Cir. 2005) (holding appeal of asset sale in Chapter 11 bankruptcy was moot in part because "[a]llowing the proceeds of a sale to pass to a third party absent a stay or segregation of funds fails to place parties on notice, thereby

---

Property's sale without RWI's easement attached, not its authority to determine the priority of the interests that were transferred from the Property to the sale proceeds.

12

reintroducing uncertainty" to the transaction), *rejected on other grounds in In re C.W. Mining Co.*, 740 F.3d 548, 560 (10th Cir. 2014).

Neither the United States nor the Trustee has explained why we or the district court could not order the United States to disgorge the proceeds it received from the Property's sale if RWI were to prevail on its priority claim on appeal. Accordingly, they have not demonstrated that there is no relief the court could order should RWI prevail on this issue, with the result that RWI's challenge to the district court's priority determination is not constitutionally moot. *Cf. Jackson v. Denver Producing & Ref. Co.*, 96 F.2d 457, 461 (10th Cir. 1938) (refusing to dismiss appeal for constitutional mootness "where only a part of the controversy has become moot and other questions remain for decision").

The Trustee and United States further contend that even if RWI's appeal is not constitutionally moot in its entirety, we should nonetheless dismiss it under the equitable mootness doctrine because granting RWI relief under the circumstances of this case would be inequitable. RWI responds that the doctrine is not available outside of the bankruptcy context and does not warrant reversal in this case in any event. But we choose not to decide these questions, because we can readily resolve on the merits the priority-of-interest issue over which we have jurisdiction. *See C.W. Mining Co.*, 641 F.3d at 1240 (proceeding to the merits after exercising discretion not to decide whether equitable mootness doctrine applied).

13

**B. Priority of the United States' and RWI's Interests in the Property**

RWI contends the United States' CERCLA lien does not have priority over its easement interest in the Property because the earlier-recorded lien Notice did not include all of the information required by Utah's lien notice statute and therefore was invalid and of no effect in establishing the lien's priority. The United States argues in response that CERCLA's lien provision, 42 U.S.C. § 9607(*l*), does not require compliance with state lien notice requirements and that even if it did, the Notice recorded by EPA sufficiently complied with the Utah statute. Reviewing these questions de novo, *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1221 (10th Cir. 2007) (review of legal questions is de novo), we agree with the district court that the Notice sufficiently complied with Utah's lien notice requirements and that it is therefore unnecessary to decide whether such compliance was required under CERCLA.

The Utah statute governing notice requirements for lien filings at the time EPA recorded the CERCLA lien provided in relevant part:

> (1)   A lien claimant or the lien claimant's agent shall send by certified mail a written copy of the notice of lien to the last-known address of the person against whom the notice of lien is filed no later than 30 days after the day on which a lien claimant or the lien claimant's authorized agent files a notice of lien meeting the requirements of Subsection (2):
>
> (a)   for recordation with:
>
> (i) a county recorder;
>
> (ii) a county clerk; or
>
> (iii) a clerk of the court.
>
> . . .

14

(2)	The notice of lien described in Subsection (1) *shall* contain the following information:

(a)	the name and address of the person against whom the lien is filed;

(b)(i)	a statement that certain property owned by the person against whom the lien is filed is subject to a lien;

(ii)	the amount of the judgment, settlement, or compromise if the lien is based on a charge against or interest in a judgment, settlement, or compromise; or

(iii)	the amount of state taxes owed;

(c)	*the article number contained on the certified mail receipt*;

(d)	the date the notice of lien was filed; and

(e)	*the name and address of the lien claimant*.

Utah Code Ann. § 38-12-102(1) & (2) (2005) (emphasis added).

RWI does not dispute that the Notice of the CERCLA lien EPA recorded in 2009 substantially complied with these requirements. In fact, RWI points to only two alleged deficiencies in the Notice: that it does not include an address for the "United States," as the lien claimant, *see id.* § 38-12-102(2)(e), or the article number from the certified mailing of the recorded Notice to the Property owner, *see id.* § 38-12-102(2)(c).

The district court properly rejected the first claimed deficiency out-of-hand, as the Notice clearly states that the United States is acting with respect to the CERCLA lien through EPA and provides the name and address of the EPA office tasked with this responsibility. *See* Aplt. App. Vol. 1 at 177-78. But it is true that the Notice as recorded does not include the article number for the certified mailing by which EPA sent the Notice to Parish, but instead includes a certificate of mailing that serves the

15

same purpose.  Thus, the question is what, if any, effect the omission of the certified mailing article number on the recorded Notice has on its validity.[7]

RWI argues that this omission invalidates the Notice in its entirety, and thus deprives the United States of its priority position, because Utah's lien notice statute requires strict rather than substantial compliance with its terms.  RWI bases this argument solely on the statute's use of the word "shall" in describing the required contents of a lien notice.  Utah Code Ann. § 38-12-102(2).  RWI's argument is meritless.

Under Utah law, "there is no universal rule of statutory construction to distinguish between statutes requiring strict or substantial compliance."  *Aaron & Morey Bonds & Bail v. Third Dist. Court*, 156 P.3d 801, 803 (Utah 2007).  To make this determination, the Utah courts look to whether the provision in question is mandatory or directory.  *See id.*; *Kennecott Copper Corp. v. Salt Lake Cty.*, 575 P.2d 705, 706 (Utah 1978).  A statutory provision is mandatory and generally requires strict compliance if it is "of the essence of the thing to be done," and a failure to strictly adhere to it would possibly prejudice "those whose rights are protected by the statute."  *Kennecott*, 575 P.2d at 706; *see Aaron & Morey*, 156 P.3d at 803.  A statutory provision is directory and requires only substantial compliance if it goes "merely to the proper, orderly and prompt conduct of the business" and if substantial compliance with its terms will effectuate the

---

[7] The validity of the CERCLA lien itself is not at issue, because Utah law expressly provides that a failure to meet the lien notice requirements does not invalidate the lien.  *See* Utah Code Ann. § 38-12-103(3).

16

policy behind the statute and will not prejudice those whom the statute is intended to protect. *Kennecott*, 575 P.2d at 706; *see Aaron & Morey*, 156 P.3d at 803.

While the legislature's use of the term "shall" implies that a statutory provision is mandatory, *see Aaron & Morey*, 156 P.3d at 804-05 & n.2, the Utah Supreme Court has expressly held that this usage is not determinative, *see Kennecott*, 575 P.2d at 706 (holding that use of "shall" and "must" do not render a statute mandatory because "[t]he intention of the legislature . . . should be controlling and no formalistic rule of grammar or word form should stand in the way of carrying out the legislative intent"). In fact, the Utah courts have held on a number of occasions that statutes stating that something "shall" be done are directory rather than mandatory and thus are satisfied by substantial compliance. *See, e.g., Aaron & Morey*, 156 P.3d at 804-05 (holding strict compliance with statutory requirement that prosecutor's fax number "shall" be included in a bail bond forfeiture notice was not required because the requirement was directory rather than mandatory); *Southwick v. Southwick*, 259 P.3d 1071, 1074-75 (Utah Ct. App. 2011) (holding strict compliance with statute providing that a disclaimer notice "shall" include a certain recitation was not required for the notice to be legally effective because the provision was directory rather than mandatory); *see also Cache Cty. v. Prop. Tax Div.*, 922 P.2d 758, 764 (Utah 1996) (holding statute stating that tax commission "shall" act by a certain date was directory rather than mandatory); *Kennecott*, 575 P.2d at 707 (holding statute stating board of county commissioners "must" and "shall" levy a tax by certain dates was directory).

Considering Utah's statutory requirements for lien notices under these standards, we conclude that the certified mailing article number requirement in Utah's lien notice statute is directory rather than mandatory, and that the statute was therefore satisfied by EPA's undisputed substantial compliance with it. First, the text of Utah's lien notice statute indicates that its primary purpose is to ensure that the person against whom the notice of lien was filed has notice that the lien was recorded. *See* Utah Code Ann. § 38-12-102(1). The purpose of Utah's recording statutes, meanwhile, is "to protect the purchaser's interest against the asserted interest of any third parties, and to inform third parties of the existence of pre-existing encumbrances on the property." *FDIC v. Taylor*, 267 P.3d 949, 960 (Utah Ct. App. 2011) (internal quotation marks omitted). The statutory requirement that the recorded lien notice include the article number for the certified mailing of the notice to the person against whom the notice is filed does not go to the essence of either of these statutory purposes, but rather goes "to the proper, orderly and prompt conduct of the business" at hand. *Kennecott*, 575 P.2d at 706. In addition, to the extent that recorded proof of mailing could be considered essential to these statutory purposes, EPA's recording of a certificate of mailing as part of the Notice satisfied these purposes. These considerations support the conclusion that the article number requirement is directory, not mandatory, and is therefore satisfied by substantial compliance.[8]

---

[8] RWI argues that strict compliance is nonetheless required because inclusion of the certified mailing number on the recorded lien notice allows interested third-parties to independently determine, by checking the number against postal records, whether the lien

18

We also agree with the district court that RWI suffered no prejudice as a result of EPA's substantial compliance with the lien notice statute. In considering this issue, "[t]he question . . . is not whether prejudice could hypothetically occur, but whether it actually did occur in this case." *Aaron & Morey*, 156 P.3d at 805. The district court found that RWI had constructive notice of the CERCLA lien before it acquired the easement, and likely actual notice as well. RWI does not dispute these findings. In light of this notice, if RWI had had any questions about the CERCLA lien notice or the lien itself, including questions about whether the lien notice had been sent to Parish by certified mail as required, it could have put these questions to Parish in the course of its easement negotiations with the company, contacted EPA, and/or consulted EPA's publicly available Lien Filing Record. Further, we note that RWI had options other than acquisition of an easement on the Property available to it to remedy its parking shortage, especially given the substantial payments UDOT had made to it to replace this parking or relocate. For its own reasons, RWI opted instead to secure an easement on the

---

notice was sent by certified mail to the property owner as required. But RWI does not point to anything in the lien notice statute or elsewhere that suggests the legislature intended that a recorded lien notice would benefit third-parties in this way. In fact, to the contrary, the Utah legislature recently reordered the lien notice statute to clarify that the article number on the certified mail receipt is *not* a required component of the lien notice as recorded but rather is a component of the separate notice of lien filing sent to the person against whom the notice is filed. *See* 2014 Utah Laws Ch. 129 (revising Utah Code § 38-12-102 to distinguish between the contents of the recorded lien notice and the contents of the notice mailed to the party against whom the lien notice is filed, codified at Utah Code Ann. § 38-12-102(2)(a) (describing required contents of notice of lien for recording) and *id.* § 38-12-102(2)(b) (adding requirement that lien notice provided to affected party include article number from the certified mail receipt)).

19

already-encumbered Property, thereby assuming the risk that its interest would be junior to the previously recorded CERCLA lien. Whatever prejudice RWI suffered as a result of this decision was of its own making.

In sum, we can discern no reason under Utah's lien notice statute why the otherwise validly recorded CERCLA lien notice should lack legal effect merely because it does not include the article number for the separate certified mailing EPA made to Parish pursuant to the statute.[9] The requirement that the recorded CERCLA lien notice include the article number, as it existed at the time EPA recorded the Notice, was directory, not mandatory. As a result, EPA's substantial compliance with the lien notice requirements rendered its CERCLA lien notice legally effective and gave it priority over RWI's later recorded easement.

## CONCLUSION

For the reasons stated above, we dismiss RWI's challenge to the sale of the Property free and clear of its easement for lack of jurisdiction and affirm the district

---

[9] We are also not persuaded that Utah Code Ann. § 38-12-103(2) requires a different result. This statute merely allows the person against whom a lien notice is filed to assert that that the lien notice does not comply with the statute's notice requirements and recover damages if the lien claimant does not correct a non-compliant notice. It therefore begs the question of what constitutes compliance with the statutory lien notice requirements.

court's determination that RWI's interest in the Property and the proceeds from its sale was junior to the United States' CERCLA lien.

Entered for the Court


Monroe G. McKay
Circuit Judge